**Hearing Date & Time:  June 1, 2021 at 11:00 a.m.**
**Objection Deadline:  May 25, 2021**

RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel:  212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for Alleged Debtor Tomer Dafna*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
In re:                                                    :     Chapter 7 (Involuntary)
                                                          :
TOMER DAFNA,                                              :     Case No.:  21-40678-nhl
                                                          :
                    Alleged Debtor.                       :
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### NOTICE OF HEARING ON MOTION TO DISMISS INVOLUNTARY PETITION PURSUANT TO 11 U.S.C. §§ 105(a) AND 303, OR, IN THE ALTERNATIVE, PURSUANT TO 11 U.S.C. §  305(a)(1)

**PLEASE TAKE NOTICE** that a hearing (the "Hearing") to consider the motion (the

"Motion") of Tomer Dafna, the alleged debtor herein, to dismiss, pursuant to sections 105(a), 303

and/or 305 of title 11 of the United States Code and Federal Rule of Bankruptcy Procedure 1011,

the involuntary petition [ECF No. 1] filed against Mr. Dafna by Saddak Funding LLC and Jerome

Williams shall be held before the Honorable Nancy Hershey Lord, United States Bankruptcy Court

for the Eastern District of New York, 271-C Cadman Plaza East, Brooklyn, New York, 11201,

telephonically at dial in number 888-363-4734, access code 4702754, on **June 1, 2021 at 11:00**

**a.m.**

**PLEASE TAKE FURTHER NOTICE** that objections to the Motion, if any, must be in

writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, shall

be filed with the Bankruptcy Court, and shall be served upon (a) counsel for the alleged debtor, Rubin LLC, 345 Seventh Avenue, 21st Floor, New York, NY 10001 (Attn.: Paul A. Rubin); (b) the Office of the United States Trustee, 201 Varick Street, New York, NY 10014 (Attn.: Rachel Wolf, Esq.); and (c) all parties who have timely filed requests for notice under Rule 2002 of the Bankruptcy Rules, so as to be received no later than **May 25, 2021**.

      **PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Court may enter an order granting the relief sought without a hearing.

      **PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: New York, New York
      April 19, 2021

                  RUBIN LLC

                  By:   */s/ Paul A. Rubin*
                      Paul A. Rubin
                      Hanh V. Huynh

                  345 Seventh Avenue, 21st Floor
                  New York, New York 10001
                  Tel: 212.390.8054
                  prubin@rubinlawllc.com
                  hhuynh@rubinlawllc.com

                  *Counsel for Alleged Debtor Tomer Dafna*

RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel:  212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for Alleged Debtor Tomer Dafna*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :

In re:                                   :     Chapter 7 (Involuntary)
                                            :

TOMER DAFNA,                :     Case No.:  21-40678-nhl
                                            :

            Alleged Debtor.     :
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### MOTION TO DISMISS INVOLUNTARY PETITION PURSUANT TO 11 U.S.C. §§ 105(a) AND 303, OR, IN THE ALTERNATIVE, PURSUANT TO 11 U.S.C. § 305(a)(1)

Tomer Dafna, the alleged debtor herein, by his counsel, Rubin LLC, submits this motion (the "Motion") to dismiss, pursuant to sections 105(a), 303 and/or 305 of title 11 of the United States Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 1011, the involuntary petition (the "Involuntary Petition") [ECF No. 1] filed against Mr. Dafna by Saddak Funding LLC ("Saddak Funding") and Jerome Williams (collectively, the "Petitioning Creditors"). In support of this Motion, Mr. Dafna respectfully represents as follows:

### PRELIMINARY STATEMENT

1.     This case represents the misuse of a powerful bankruptcy tool.  Saddak Funding and Jerome Williams (collectively, the "Petitioning Creditors") commenced this involuntary chapter 7 case by signing and causing to be filed the *Involuntary Petition Against an Individual*

(the "Involuntary Petition") [ECF No. 1] against Mr. Dafna on March 18, 2021.  Saddak Funding filed the Involuntary Petition after having filed five motions for default or summary judgment in the state court foreclosure action it commenced against Mr. Dafna and 1905 Fulton Street LLC in August 2018.  Jerome Williams obtained a default judgment against Mr. Dafna in May 2019 in a slip and fall case in which Mr. Dafna was never served with a complaint or motion for default judgment.  Mr. Dafna was not aware of Jerome Williams's judgment until March 2021.

2.      The Involuntary Petition should be dismissed for several reasons.  The Petitioning Creditors do not qualify as creditors under section 303 of the Bankruptcy Code.  Their claims are subject to bona fide dispute.  Even if their claims were not subject to bona fide dispute, the Involuntary Petition must be dismissed because there are only two petitioning creditors, and Mr. Dafna has twelve or more creditors.  Furthermore, the Petitioning Creditors commenced the involuntary case in bad faith and for an improper purpose.  The Involuntary Petition constitutes an effort, by a frustrated mortgagee who elected its remedy to foreclose rather than sue on a guaranty, to create an alternative forum for its grievances, and to use this Court as a collection device because it has failed for years to achieve success in its foreclosure action.  Before and after filing the Involuntary Petition, the Petitioning Creditors' counsel repeatedly contacted Mr. Dafna's criminal defense counsel, insinuating that Mr. Dafna's interests in his criminal case, which has been pending since September 2019, will be harmed unless he settles.

3.      Moreover, even if the Court were to permit the involuntary case to continue, it should exercise its discretion to abstain and dismiss the Involuntary Petition under section 305(a)(1) of the Bankruptcy Code.  The Involuntary Petition is a two-party dispute between Saddak Funding and Mr. Dafna.  The parties have already been litigating their dispute in Kings County Supreme Court since August 2018.  Indeed, Saddak Funding's third motion for summary judgment

was pending before the state court when the Involuntary Petition was filed. Mr. Dafna respectfully submits that this dispute does not belong in this Court. It is telling that Saddak Funding filed the Involuntary Petition while its own motion for summary judgment was pending, which has the effect of staying its own foreclosure action.

## **RELEVANT FACTS**

**Petitioning Creditor Jerome Williams**

4.      Jerome Williams signed the Involuntary Petition based on a judgment he obtained in May 2019 against Mr. Dafna in a slip and fall litigation without ever serving Mr. Dafna in that action. As set forth below, Mr. Dafna never knew about the judgment until March 2021.

5.      On or about February 16, 2017, Jerome Williams filed a complaint in the Supreme Court of the State of New York, County of Kings (the "<u>State Court</u>") against REDF Equities LLC ("<u>REDF</u>"), Iskyo Aronov, David Augenstein, Herman Meisels and Tomer Dafna for injuries Jerome Williams sustained in a slip and fall that occurred on the premises owned by REDF located at 155 Wyona Street in Brooklyn. The case is pending under index number 503186/2017 (the "<u>Slip and Fall Case</u>").

6.      The record of the Slip and Fall Case shows that Mr. Dafna was not served with the summons and complaint in that case. Jerome Williams twice attempted service of the summons and complaint on Mr. Dafna at 147-07 72nd Road, Apt. 3C, Flushing, New York, but was unable to effectuate service. *See* Affidavit of Attempted Service, annexed hereto as <u>Exhibit A</u>. This is not surprising, because Mr. Dafna has not resided at that address for at least the past ten years. *See* <u>Exhibit B</u>, Marcela Dafna Decl. ¶ 2. Several months later, Jerome Williams filed another affidavit of service purporting to effect "nail and mail" service at the same incorrect address after attempting (but failing) three more times to personally serve Mr. Dafna at that wrong address. The mailing

portion of that certificate of service is also unsigned.  *See* Affidavit of Service, annexed hereto as Exhibit C.

7.      In the Slip and Fall Case, co-defendant Iskyo Aronov, a member of REDF, moved to dismiss the complaint on the basis that, because REDF owned the property at the time of the injury, in order to hold Aronov personally liable the plaintiff was required to, but could not, pierce the corporate veil.  Jerome Williams opposed the motion to dismiss and cross-moved for default as against all other co-defendants ***except for Tomer Dafna***.  Mr. Williams never moved for default against Mr. Tomer.

8.      On April 25, 2018, the State Court issued a decision dismissing the complaint as against Aronov for failure to state a cause of action for piercing the corporate veil, and denying the plaintiff's request to file an amended complaint.  *See* State Court decision granting motion to dismiss, annexed hereto as Exhibit D.  The State Court further granted Jerome Williams's cross-motion for default judgment against the remaining defendants, ***other than Tomer Dafna***.

9.      Despite the facts that (i) Jerome Williams failed to serve Tomer Dafna, (ii) he never requested default judgment against Tomer Dafna in his cross-motion for default judgment; and (iii) the State Court never granted default judgment as against Tomer Dafna in its April 25, 2018 decision, counsel for Jerome Williams in the Slip and Fall Case submitted (and the State Court entered) an order granting default judgment against all the remaining defendants, ***including Mr. Dafna***.  *See* Judgment dated May 23, 2019, annexed hereto as Exhibit E.  Thus, it is clear that default judgment was erroneously entered against Mr. Dafna.

10.     On June 19, 2019, defendant Herman Meisels moved to vacate the default judgment entered against him in the Slip and Fall Case because he was not properly served, and he sought to dismiss the complaint for failure to state a cause of action for piercing the corporate veil.  *See*

Affirmation of Mark F. Heinze in support of motion to vacate and dismiss, annexed hereto as Exhibit F.  On September 17, 2019, the State Court entered an order vacating the default judgment against Meisels in the Slip and Fall Case and dismissed the complaint as against him.  *See* Order dated September 11, 2019, annexed hereto as Exhibit G.

11.    Mr. Dafna was never given even informal notice of the (erroneously entered) default judgment against him in the Slip and Fall Case, until counsel for the Petitioning Creditors threatened to file the Involuntary Petition against him in March 2021.  *See* Affidavit of Tomer Dafna filed in Slip and Fall Case, annexed hereto as Exhibit H.

12.    State court counsel for Mr. Dafna has filed or shortly will be filing an order to show cause to vacate Mr. Williams's judgment and dismiss the complaint in the Slip and Fall Case.  *See* Affirmation of Rachelle Rosenberg in Support of Motion to Vacate Judgment and to Dismiss, annexed hereto as Exhibit I.  Like Mr. Dafna's identically-situated individual co-defendants in the Slip and Fall Case, the State Court very likely will vacate default judgment, and dismiss the complaint as against Mr. Dafna.

13.    Accordingly, the default judgment against Mr. Dafna improperly obtained by Jerome Williams without service on Mr. Dafna and without Mr. Dafna's knowledge cannot form the basis for Jerome Williams to qualify as a petitioning creditor against Mr. Dafna under section 303(b) of the Bankruptcy Code.

**Saddak Funding and Its Foreclosure Action**

14.    On or about August 23, 2018, Saddak Funding filed a summons and complaint commencing a foreclosure action in the State Court against 1905 Fulton Street LLC ("1905 Fulton"), 1 Oak Capital LLC, and Tomer Dafna, pending under index number 517283/2018 (the "Foreclosure Action").   In the Foreclosure Action, Saddak Funding seeks: (i) to foreclose a mortgage (the "Mortgage") on real property located at 1905 Fulton Street, Brooklyn, New York

(the "<u>Fulton Street Property</u>") owned by 1905 Fulton, which Mortgage was given to secure a loan in the principal amount of $400,000.00 made by Saddak Funding to 1905 Fulton pursuant to a Note dated October 8, 2015 (the "<u>Note</u>"); and (ii) a deficiency judgment against Mr. Dafna based on guaranty dated October 8, 2015 (the "<u>Guaranty</u>") in connection with the mortgage loan.

15.    In the Foreclosure Action, Saddak Funding has unsuccessfully attempted on multiple occasions to obtain default and/or summary judgment against the defendants, including Mr. Dafna.  On September 27, 2018, shortly after commencing the Foreclosure Action, Saddak Funding moved for default judgment and an expedited judgment of foreclosure and sale.  On November 5, 2018, Saddak Funding submitted a notice of settlement and proposed default judgment and judgment of foreclosure sale.  1905 Fulton and Mr. Dafna filed opposition on the basis of, among other things, the plaintiff's failure to serve Mr. Dafna and failure to provide defendants sufficient time to respond to the complaint.  The State Court declined to sign Saddak Funding's proposed judgment.  Consequently, on February 13, 2019, Saddak Funding submitted an amended proposed order of judgment and judgment of foreclosure sale, and the defendants again opposed entry of the proposed judgment.

16.    By decision and order dated March 20, 2019, the State Court declined to sign either of the proposed orders submitted by Saddak Funding in connection with its first motion for default judgment.  In that order, the State Court noted that "[n]umbers are not the same in computation, and exhibits are missing.  Motion is deemed abandoned."  *See* State Court March 20, 2019 order, together with the plaintiff's proposed judgment marked up by the State Court with numerous question marks and deletions, annexed hereto as <u>Exhibit J</u>.

17.    Undeterred by the State Court's denial of the requested relief, Saddak Funding promptly filed a second motion for default judgment, order of reference, and judgment of

foreclosure and sale.  1905 Fulton and Mr. Dafna opposed this second default judgment motion, and cross-moved to dismiss the complaint.  By order dated June 5, 2019, Saddak Funding's motion for default judgment and the defendants' cross motion to dismiss were both denied.  A copy of the June 5, 2019 order of the State Court is annexed hereto as <u>Exhibit K</u>.  On July 3, 2019, 1905 Fulton and Tomer Dafna filed their answer to the foreclosure complaint.

18.     On July 30, 2019, Saddak Funding made a third effort to obtain relief in the Foreclosure Action, this time by filing a motion for summary judgment.  Saddak Funding acknowledged in that motion that the premises being foreclosed upon "is currently vacant land." *See* Affirmation of James J. Quail in Support of Plaintiff's Motion for a Default Judgment, Summary Judgment and Order of Reference at ¶ 15, together with pictures of the vacant land attached thereto, annexed hereto as <u>Exhibit L</u>.  1905 Fulton and Mr. Dafna opposed the motion. In the face of that opposition, Saddak Funding withdrew its motion for summary judgment.

19.     On November 14, 2019, Saddak Funding filed its second motion for summary judgment against the defendants, including Mr. Dafna, and the defendants again opposed on the same grounds.  This second motion for summary judgment was "marked off" the court's calendar due to Saddak Funding's procedural failures.  Saddak Funding filed a ***third*** motion for summary judgment on March 9, 2020.  The third motion for summary judgment remains pending.

**<u>The Threat To File An Involuntary Case</u>**

20.     Apparently dissatisfied with the setbacks and the lack of progress in the Foreclosure Action, it seems Saddak Funding is determined to use whatever means necessary to attempt to collect against 1905 Fulton and Mr. Dafna.  This was made abundantly clear when newly-retained "special counsel" for Saddak Funding in the Foreclosure Action, Leo Jacobs, Esq., emailed Mr. Dafna's criminal defense attorneys on March 18, 2021 with a very open threat.  He wrote:

See attached an Involuntary Petition against your client which I have been directed to file for the benefit of all creditors **absent the satisfactory resolution of your clients issues.**

Please, if you may call me to discuss.

This office represents Saddack *[sic]* Funding LLC as special counsel relating to an action Index No.: 517283/2018 Saddack Funding LLC v. 1905 Fulton Street LLC.  We are not counsel of record in that case, **but were retained additionally for alternative avenues of recourse against 1905 Fulton St LLC**, a Limited Liability Company your client owns.

Saddick Funding LLC gave a mortgage to 1905 Fulton St LLC in the amount of $400,00 and interest, to wit has since been in default and has not yet been repaid.

If I do not hear from you by 6:45pm, I intend to file it.

Email from leo@jacobspc.com to asfuterfas@futerfaslaw.com and jconway@larussoandconway.com, sent Mar. 18, 2021 at 5:48 pm, a copy of which is annexed hereto as <u>Exhibit M</u> (emphasis added).  Mr. Jacobs did not send this email to counsel representing 1095 Fulton and Mr. Dafna in the Foreclosure Action.

21.    Mr. Jacobs's email expressly stated that Saddak Funding was seeking an alternate avenue of recourse against 1905 Fulton based on its outstanding claim.  The email did not raise any concerns of any other alleged creditors of Mr. Dafna that might need to be resolved.  The threat to file the involuntary petition to coerce payment of 1905 Fulton's mortgage debt is blatant.

22.    Counsel for Mr. Dafna did not respond to the email.

**<u>The Involuntary Petition</u>**

23.    True to Mr. Jacobs's threat, the Involuntary Petition was filed on March 18, 2021. A copy of the Involuntary Petition is annexed hereto as <u>Exhibit N</u>.  The Involuntary Petition lists Mr. Dafna's principal place of business as 1905 Fulton Street, Brooklyn, New York, even though Saddak Funding already told the State Court that 1905 Fulton Street is merely a vacant lot.  The

Petitioning Creditors left blank the space on the Involuntary Petition form where they were supposed to list Mr. Dafna's principal residence.

24.    The Involuntary Petition lists the claim of Saddak Funding in the amount of $850,000 based on the Guaranty, and the claim of Jerome Williams in the amount of $460,000 based on the default judgment entered in the Slip and Fall Case.  The Involuntary Petition is signed by each of Saddak Funding and Jerome Williams under penalty of perjury.  Each of them lists Mr. Jacobs's law office address as their mailing address, even though that is not the mailing address they supplied for themselves in the Foreclosure Action and the Slip and Fall Case.

**The Motion to Appoint an Interim Trustee**

25.    On April 6, 2021, Saddak Funding filed a motion (the "<u>Trustee Motion</u>") [ECF No. 8] by order to show cause, for the appointment of an interim trustee, well as injunctive relief prohibiting the transfer, disposition or "the affecting in any way" of assets owned by Mr. Dafna or owned by 23 entities listed in the identical Affidavits of David Crispin and Keren Crispin (managing members of Saddak Funding) in support of the Trustee Motion.

26.    In their identical affidavits in support of the Trustee Motion, David Crispin and Keren Crispin highlight, under penalty of perjury, that the United States Attorney's Office of the Eastern District of New York filed a civil lawsuit on January 4, 2021, supposedly against Mr. Dafna and others, and they provide a link to a press release purporting to support this statement. *See* each Crispin Affidavit ¶ 12.  Their allegation is patently false and belied by the very press release the Crispins link to in their affidavits.  That press release does not contain a single reference to Tomer Dafna.  Likewise, the 64-page *Complaint-In-Intervention of the United States of America and Demand for Jury Trial* that is attached as Exhibit D to the Trustee Motion (and the subject of the press release), does not include a single reference to Tomer Dafna.  This is because Mr. Dafna is not a defendant in that civil litigation.

27.     Additionally, neither the Trustee Motion nor the affidavits identified any facts to demonstrate that Mr. Dafna was dissipating his assets, or threatening to dissipate his assets during the gap period, or that there are exist extraordinary circumstances requiring relief as drastic as the appointment of an interim trustee when an order for relief has not been entered in this involuntary case.

28.     Instead, Saddak Funding attempted to provide the barest of justifications for the relief sought in the Trustee Motion by innuendo, referring to a pending criminal indictment against Mr. Dafna, which Saddak Funding claims, without explanation, encompasses a fraudulent scheme of which Saddak Funding was also a victim.  But the issues in the Foreclosure Action commenced by Saddak Funding have nothing to do with the criminal indictment.  The indictment alleges fraud on institutional investors through "short sale" transactions.

29.     The Foreclosure Action is a very different scenario, a run-of-the-mill mortgage foreclosure action not involving allegations of fraud of any kind.  Saddak Funding has sought to enforce loan documents providing for default interest at a rate of 24%, late fees of 5% and legal fees of 15% of the balance due, the aggregate of which may make the loan unenforceable.  Saddak Funding has not alleged any fraud in the foreclosure complaint.  The concerns alleged in the indictment, which has languished since September 2019, have nothing whatsoever to do with the facts and circumstances of Saddak Funding's loan or the Foreclosure Action, or any fraud on creditors of Mr. Dafna.

30.     On April 8, 2021, the Court entered the *Order to Show Cause for Appointment of Interim Chapter 7 Trustee and Preliminary Injunction* [ECF No. 9], setting a hearing on the Trustee Motion for April 14, 2021.

31.     On April 13, 2021, Mr. Dafna filed his objection to the Trustee Motion (the "Objection to the Trustee Motion") [ECF No. 11].  The Objection to the Trustee Motion attached the Declarations of Kimberly Johnson Gohar, Scott Kushnick, and Marcela Dafna (annexed as Exhibits M, N, & O respectively to the Objection to the Trustee Motion) refuting Saddak Funding's completely unsupported allegations that Mr. Dafna controls a hodgepodge of 23 entities held in the names of his wife, son and former business associates against whom Saddak Funding seeks injunctive relief, and that transfers involving those entities should be restrained based on Saddak Funding's cursory and unsupported allegation that Mr. Dafna controls these entities.

32.     Following the hearing on the Trustee Motion held on April 14, 2021, the Court denied Saddak Funding's request for the appointment of an interim trustee and denied its request for a preliminary injunction.

**Communications Following Commencement of the Involuntary Case**

33.     On April 12, 2021, bankruptcy counsel for Mr. Dafna emailed to Mr. Jacobs a letter responding to the filing of the Involuntary Petition by the Petitioning Creditors, calling upon them to withdraw it.  A copy of the April 12, 2021 email attaching the April 12, 2021 letter from Rubin LLC to Mr. Jacobs is annexed hereto as Exhibit O.

34.     Mr. Jacobs responded to the email from Rubin LLC later that day.  While Mr. Jacobs' response pays lip service to a desire to engage in good faith negotiations, his email clearly states that he has been reaching out only to Mr. Dafna's criminal defense attorneys (not Mr. Dafna's counsel in the Foreclosure Action) and that he even invited the Department of Justice to the hearing to support the Trustee Motion.  A copy of the April 12, 2021 email from Leo Jacobs to Paul Rubin is annexed hereto as Exhibit P.  This highly unusual email contains the following remarkable statements:

- "[Y]our client is under three separate civil and criminal indictments." [This statement is patently false.]

- "At every turn I tried to resolve this matter without filing this involuntary *by reaching out to his criminal counsel on three or four separate occasions* before filing, but to no avail." (emphasis added).

- "*I will have you know that I invited the DOJ to our hearing in support of our position*."

35.     Mr. Jacobs's singular focus on the criminal indictment against Mr. Dafna is telling, and lays bare Saddak Funding's true intention to stop at nothing, even abuse of the involuntary bankruptcy process, to pressure Mr. Dafna to settle with Saddak Funding in the Foreclosure Action.  Although Mr. Jacobs was retained as special for Saddak Funding to provide alternative avenues of recourse against 1905 Fulton, he repeatedly insinuates that his clients should be paid lest there be harmful ramifications for Mr. Dafna in his criminal case.

## **ARGUMENT**

36.     The Involuntary Petition must be dismissed because neither Petitioning Creditor is qualified to be a petitioning creditor under section 303(b) of the Bankruptcy Code.  The Petitioning Creditors' claims are subject to bona fide dispute as to liability and amount.  Even if the Petitioning Creditors' claims could somehow be found to be undisputed, the Petitioning Creditors do not satisfy the statutory requirement that there be at least *three* petitioning creditors because Mr. Dafna has twelve or more creditors.  Lastly, the Involuntary Petition should be dismissed because it was filed in bad faith, for in improper purpose, and as a litigation tactic.  Mr. Dafna expressly reserves his rights to seek damages and sanctions against the Petitioning Creditors under section 303(i) of the Bankruptcy Code.

37.     As a preliminary matter, Rule 1011 of the Federal Rules of Bankruptcy Procedure, which governs motions to dismiss involuntary bankruptcy petitions pursuant to section 303 of the Bankruptcy Code, provides that all defenses and objections to an involuntary petition must be

presented in the manner set forth in Rule 12 of the Federal Rules of Civil Procedure. FED. R. BANKR. P. 1011(b). Rule 12 of the Federal Rules of Civil Procedure allows certain defenses— including the defense in FED. R. CIV. P. 12(b)(6) for "failure to state a claim upon which relief can be granted"—to be asserted in the form of a pre-answer motion. FED. R. CIV. P. 12(b). As explained below, (i) the Petitioning Creditors are not qualified to commence an involuntary bankruptcy case because neither of them holds a claim against Mr. Dafna "that is not … the subject of a bona fide dispute as to liability or amount," as required by section 303(b), and (ii) even if both Petitioning Creditors somehow qualified under section 303(b), because Mr. Dafna has twelve or more creditors, three qualified petition creditors are required to commence an involuntary case against Mr. Dafna. Accordingly, the Mr. Dafna seeks dismissal of the Involuntary Petition pursuant to FED. R. CIV. P. 12(b)(6) because the Petitioning Creditors cannot meet their burden of showing compliance with the requirements of section 303(b) of the Bankruptcy Code.

## I. THE INVOLUNTARY PETITION SHOULD BE DISMISSED BECAUSE THE PETITIONING CREDITORS' CLAIMS ARE SUBJECT TO BONA FIDE DISPUTE AS TO LIABILITY AND AMOUNT

38. Section 303(b)(1) of the Bankruptcy Code provides, in relevant part, that "[a]n involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title … by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the ***subject of a bona fide dispute as to liability or amount***." 11 U.S.C. § 303(b)(1) (emphasis added).

39. If the Petitioning Creditors' claims are subject to a bona fide dispute, the involuntary case must be dismissed. *See Crest One Spa v. TPG Troy, LLC (In re TPG Troy, LLC)*, 793 F.3d 228 (2d Cir. 2015) (affirming dismissal of involuntary case where all claims were the subject of a bona fide dispute); *Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 120 (2d Cir. 2003) (same); *Lubow Mach. Co., Inc. v. Bayshore Wire Prods Corp. (In re Bayshore*

*Wire Prods. Corp.)*, 209 F.3d 100, 104 (2d. Cir. 2000) (affirming dismissal of case where creditor's claim was the subject of a bona fide dispute); *In re Taub*, 439 B.R. 261, 273 (Bankr. E.D.N.Y. 2010).

40.     The Bankruptcy Code does not define the term "bona fide dispute" within the meaning of section 303(b).  *See In re Mountain Dairies Inc.*, 372 B.R. 623, 632 (Bankr. S.D.N.Y. 2007).   The Second Circuit Court of Appeals has held that an objective test must be used to determine whether a bona fide dispute exists.  *See In re TPG Troy, LLC*, 793 F.3d at 234; *In re BDC 56, LLC*, 330 F.3d at 117-18.  Under this test, the bankruptcy court must determine whether there is an objective basis for either a factual or legal dispute as to the validity of the debt.  *See TPG Troy*, 793 F.3d at 234; *In re BDC 56, LLC*, 330 F.3d at 117-18.  The objective standard set forth in *In re BDC* "allows a creditor to be disqualified whenever there is any legitimate basis for the debtor not paying the debt, factual or legal."  *In re Ishaky*, 2010 WL 935572, at *3 (Bankr. E.D.N.Y. Mar. 11, 2010).  As the Second Circuit has stated:

> There is a bona fide dispute if there is either a genuine issue of material fact that bears upon the debtor's liability or a meritorious contention as to the application of law to undisputed facts.  [T]he legislative history makes it clear that Congress intended to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is factual or legal.  An involuntary bankruptcy case cannot be the means of pressuring a debtor to pay a legitimately disputed debt.

*In re TPG Troy*, 793 F.3d at 234 (internal quotation and citations omitted).

41.     Under this test, a petitioning creditor bears the initial burden of coming forward with evidence to establish a prima facie case that no bona fide dispute exists.  *See id.*; *In re BDC 56, LLC*, 330 F.3d at 118.  Only after such a prima facie case is established does the burden shift to the alleged debtor to demonstrate the existence of a bona fide dispute.  *See id.*  Critically, while a bankruptcy court is called upon to determine the presence of a bona fide dispute, it is not called on to resolve the dispute.  *See id.*

42.     Following the amendments to the Bankruptcy Code enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), several courts have held that a bona fide dispute over even a portion of a petitioning creditor's claim is sufficient to disqualify the creditor.  For example, the bankruptcy court in the Southern District of New York explained as follows:

> The phrase "as to liability or amount" was added to § 303(b)(1) and (h)(1) following the phrase "bona fide dispute" in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.  Prior to the amendment, a dispute limited to the amount was not a "bona fide dispute" as to the entire claim, at least under § 303(b)(1).  The 2005 amendment presumably eliminated the second part of the test.  As a result of the amendment, any dispute regarding the amount that arises from the same transaction and is directly related to the underlying claim should render the claim subject to a *bona fide* dispute.

*In re Euro-Am. Lodging Corp.*, 357 B.R. 700, 712, n.8 (Bankr. S.D.N.Y. 2007) (citations omitted); *see also Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1185 (9th Cir. 2019) (collecting cases).

43.     The Second Circuit has not ruled on this issue, but each of the United States Circuit Courts of Appeal that has addressed this issue (the First, Fifth and Ninth Circuits) has held that, following BACPA, a bona fide dispute as to *any* amount of a petitioning creditor's claim strips the creditor of standing to be a petitioning creditor under section 303(b)(1) of the Bankruptcy Code. *See Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1185 (9th Cir. 2019); *Fustolo v. 50 Thomas Patton Dr., LLC*, 816 F.3d 1, 10 (1st Cir. 2016); *Credit Union Liquidity Servs., LLC v. Green Hills Dev. Co. (In re Green Hills Dev. Co.)*, 741 F.3d 651, 657 (5th Cir. 2014).  "The basis of that conclusion is *the plain meaning of section 303(b)(1)*, which encompasses disputes as to liability or amount and requires that such noncontingent, undisputed claims aggregate the threshold amount."  *In re Manolo Blahnik USA, Ltd.*, 619 B.R. 81, 92 (Bankr. S.D.N.Y. 2020) (quotation and citation omitted) (emphasis added).

### A.    A Bona Fide Dispute Exists As To The Liability And Amount Of The Jerome Williams Claim

44.    There is plainly a bona fide dispute as to liability on the Jerome Williams claim based on the default judgment Mr. Williams erroneously obtained in the Slip and Fall Case.  The dispute over liability on the judgment falls squarely within the standard enunciated by the Second Circuit in *In re BDC* for assessing whether a dispute is a bona fide dispute—there are legitimate legal and factual bases for Mr. Dafna not to pay the default judgment obtained by Jerome Williams in the Slip and Fall Case.

45.    As described above, Jerome Williams filed an affidavit of attempted service in the Slip and Fall Case acknowledging the ***non***-service of the summons and complaint on Mr. Dafna, and months later filed an incomplete affidavit of nail and mail service at the same incorrect address, with an unsigned mail portion of the affidavit.  Most importantly, Mr. Williams specifically did ***not*** even request default judgment as against Mr. Dafna, and the State Court specifically did not grant relief as against Mr. Dafna in its decision.  Despite all of the foregoing, counsel for Mr. Williams in the Slip and Fall Case inexplicably submitted, and the State Court entered, a default judgment against all defendants, including Mr. Dafna.

46.    Given the State Court's prior decision vacating default judgment against a co-defendant who was not properly served in the Slip and Fall Case, and dismissing the complaint against individual defendants based on the inability, as a matter of law, of Mr. Williams to allege a cause of action for piercing the corporate veil against a member of the property owner, the default judgment against Mr. Dafna (even if he were a member of REDF) likely will be vacated and the complaint against him dismissed when the facts are brought to the attention of the State Court. Accordingly, Mr. Dafna has raised a bona fide dispute as to his liability on the default judgment obtained by Jerome Williams, and upon which Mr. Williams bases his status as a petitioning

creditor.  Mr. Williams is, therefore, disqualified to be a petitioning creditor under section 303(b) of the Bankruptcy Code.

47.     To the extent that Jerome Williams argues that the default judgment against Mr. Dafna in the Slip and Fall Case may not be collaterally attacked under the doctrines of *res judicata* and *Rooker-Feldman*, those doctrines do not apply to judgments that were issued by a court that was without jurisdiction to enter them.  *See In re WorldCom, Inc.*, 2007 WL 735021, at *1 (Bankr. S.D.N.Y. Mar. 9, 2007) ("[A] claim which has been reduced to judgment may nevertheless be challenged in the bankruptcy court on the ground that the rendering court lacked jurisdiction.") (citations and quotation omitted); *see also In re Slater*, 1996 WL 699719, at *7 (Bankr. E.D.N.Y. Aug. 1, 1996) ("Under New York law, a party may be relieved from a judgment or order upon the following grounds: … lack of jurisdiction to render the judgment or order… .") (citing N.Y. CPLR § 5015(a)).  Mr. Dafna was never served in the Slip and Fall Case.  *See* <u>Exhibit H</u> (Affidavit of Tomer Dafna).  Substitute service of a summons and complaint at an address where the defendant had not lived for years at the time of the attempted service is plainly not good service.  Accordingly, the State Court never had personal jurisdiction over Mr. Dafna and default judgment should not have been entered against him.

> **B.     A Bona Fide Dispute Exists As To The Liability
> And Amount Of The Saddak Funding Claim**

48.     The claim of Saddak Funding against Mr. Dafna based on the Guaranty is also subject to bona fide dispute as to liability and amount.  The underlying claim on the Guaranty arises from the Note and Mortgage given by Saddak Funding in connection with its loan to 1905 Fulton, and Saddak Funding has elected to foreclose on the  Mortgage.  The parties have been litigating the Foreclosure Action since 2018, and as described above, Saddak Funding has made, and Mr. Dafna and 1905 Fulton have opposed, five different motions for default judgment and

summary judgment in the Foreclosure Action, none of which have been granted by the State Court. The most recent third summary judgment motion is fully submitted and was pending in the State Court Foreclosure Action when the Petitioning Creditors filed the Involuntary Petition.

49.    In the Foreclosure Action, and as part of the pending summary judgment motion, Mr. Dafna and 1905 Fulton have a raised a bona fide dispute as to the liability and amount of the claim under the Note and Mortgage (and thus, the Guaranty as well).   The maximum per annum interest rate for a loan is 25% under New York's criminal usury statutes.   N.Y. PENAL LAW §§ 190.40, 190.42.   Criminal usury may constitute a defense where the amount of the loan or forbearance is more than $250,000 and less than $2,500,000.   *See Blue Wolf Cap. Fund II, LP v. Am. Stevedoring*, 961 N.Y.S.2d 86 (1st Dep't 2013).   Here, the loan documents provide for default interest at 24%, plus late fees of 5%, plus legal fees of 15%.   Mr. Dafna and 1905 Fulton have asserted that the effective interest rate charged under the loan documents in the aggregate constitutes criminal usury.   *See, e.g., Union Capital LLC v. Vape Holdings Inc.*, 2017 WL 1406278 (S.D.N.Y. Mar. 31, 2017) (in the context of a criminal usury defense under New York law, "the Court may not enforce a default interest rate that exceeded an overall effective interest rate of 25%. If, as Vape alleges, the due diligence and legal fees Union charged as part of the Note and SPA were in fact hidden interest payments, then imposing a default interest of 24% would exceed the statutory limit.").   Some courts deem criminally usurious notes void.   *See, e.g., Kingsize Entm't v. Martino*, 63 N.Y.S.3d 714, 715 (2d Dep't 2017) ("[A] loan that is criminally usurious is void."); *Blue Wolf Cap. Fund II, LP v. Am. Stevedoring*, 961 N.Y.S.2d 86, 90 (1st Dep't 2013) (same).

50.    The Saddak Funding claim is also subject to bona fide dispute for a second reason. It is based on a Guaranty that Saddak Funding is not permitted to sue to enforce until it has exhausted its remedies in the Foreclosure Action.   Because Saddak Funding has elected to

foreclose on the Mortgage, it is barred by the election of remedies statute under New York law from instituting an action to collect on the Guaranty until the remedies in the Foreclosure Action are exhausted. "New York law restricts the ability of a lender to bring more than one action to recover on the same mortgage debt. RPAPL Section 1301(3) provides that '[w]hile the action is pending or after final judgment for the plaintiff therein, no other action shall be commenced or maintained to recover any part of the mortgage debt, without leave of the court in which the former action was brought.' RPAPL § 1301(3). This election of remedies rule applies to actions against guarantors of mortgage loans." *In re South Side House, LLC,* 470 B.R. 659, 673-74 (Bankr. E.D.N.Y. 2012). Thus, Saddak Funding is barred from pursuing its claim based on the Guaranty at this time. By filing the Involuntary Petition, Saddak Funding is effectively using this Court as a new rented battlefield, an alternative forum to initiate proceedings to try to enforce its guaranty claim against Mr. Dafna personally, even though the election of remedies doctrine prohibits Saddak Funding from commencing a new action to enforce that obligation. At a bare minimum, Saddak Funding's rights to enforce the guaranty obligation against Mr. Dafna outside the confines of the Foreclosure Action is the subject of a bona fide dispute.

51.     Saddak Funding is, therefore, disqualified to be a petitioning creditor under section 303(b) of the Bankruptcy Code.

## II.     THE INVOLUNTARY PETITION SHOULD BE DISMISSED BECAUSE THERE ARE FEWER THAN THREE PETITIONING CREDITORS

52.     Even if the Court were to permit either or both of the Petitioning Creditors to qualify under section 303(b)(1) as petitioning creditors, the Involuntary Petition must still be dismissed. Section 303(b)(1) of the Bankruptcy Code requires ***three*** petitioning creditors to file an involuntary petition, where the alleged debtor has twelve or more creditors. *See* 11 U.S.C. § 303(b)(1) & (2).

The two Petitioning Creditors in this case fail to satisfy the numerosity requirement of section 303(b)(1) where, as here, the alleged debtor has twelve or more creditors.

53.     As set forth in the accompanying Declaration of Tomer Dafna, annexed hereto as Exhibit Q, Mr. Dafna has more than twelve creditors.  The claims of the creditors, which pre-date the Involuntary Petition, are described in Mr. Dafna's declaration, and documents evidencing the claims are attached thereto.  Because Mr. Dafna has filed a list identifying twelve or more creditors, and there are fewer than three petitioning creditors, the Petitioning Creditors bear the burden of showing that Mr. Dafna has fewer than twelve creditors.  *See, e.g., In re Global Waste Co.*, 207 B.R. 542,  (Bank. N.D. Ohio 1997) (dismissing involuntary chapter 7 petition where petitioning creditor failed to satisfy its burden to demonstrate alleged debtor had fewer than 12 creditors).

54.     The creditors identified by Mr. Dafna are non-insiders holding claims that are not subject to bona fide dispute.  The Petitioning Creditors will not be able to demonstrate that Mr. Dafna has fewer twelve creditors.  Accordingly, the Involuntary Petition must be dismissed because it was not filed by the statutorily required three qualified petitioning creditors under section 303(b)(1) of the Bankruptcy Code.

## III.     THE INVOLUNTARY PETITION SHOULD BE DISMISSED BECAUSE IT WAS FILED IN BAD FAITH

55.     The Involuntary Petition should also be dismissed because it was filed in bad faith. Involuntary petitions have serious consequences for alleged debtors.  Involuntary cases must be filed in good faith.  *See In re Abir*, 2007 WL 4556909, at *4 (Bankr. S.D.N.Y. Dec. 20, 2007) ("It is well-established that courts have authority to dismiss an involuntary chapter 11 petition filed in bad faith … ."); *Basin Elec. Power Coop v. Midwest Processing Co.*, 769 F.2d 483, 486 (8th Cir. 1985) (finding that bad faith may be cause for dismissal of a petition); *In re Tichy Elec. Co., Inc.*, 332 B.R. 364, 373 (Bankr. N.D. Iowa 2005) ("Although the Bankruptcy Code does not explicitly

require that a bankruptcy petition be filed in good faith, the Eighth Circuit has found that the Code

contains an implicit good faith requirement."); *In re Bock Transp. Inc.*, 327 B.R. 378, 381 (8th Cir.

BAP 2005) (finding that Bankruptcy Code has implicit requirement of good faith).

56.    This Court has noted as follows, with respect to whether an involuntary case was

commenced in bad faith:

> Although the Second Circuit has not selected a particular test to determine
> the presence of bad faith, it has identified a variety of tests that have been
> utilized by the judiciary:  Some courts have used an ***"improper use" test***,
> which finds bad faith when a petitioning creditor uses involuntary
> bankruptcy procedures in an attempt to obtain a disproportionate advantage
> for itself, rather than to protect against other creditors obtaining
> disproportionate advantages, particularly when the petitioner could have
> advanced its own interests in a different forum.  … Other courts have
> applied an ***"improper purpose" test***, where bad faith exists if the filing of
> the petition was motivated by ill will, malice, or a desire to embarrass or
> harass the alleged debtor. … A third line of cases employs an ***objective test
> for bad faith*** based on what a reasonable person would have believed. …
> Finally … a number of courts have sought to model the bad faith inquiry on
> the standards set forth in ***Bankruptcy Rule 9011***.

*In re CNG Foods LLC*, 2020 WL 4219679 at *10-*11 (Bankr. E.D.N.Y. July 13, 2020) (quotations,

citations omitted, emphasis in original) (citing *Lubow Mach. Co., Inc. v. Bayshore Wire Prods*

*Corp. (In re Bayshore Wire Prods. Corp.)*, 209 F.3d 100, 105-06 (2d. Cir. 2000).

57.    Most courts, including this Court, have adopted a "totality of the circumstances"

test.  *In re CNG Foods LLC*, 2020 WL 4219679 at *11 (citing *In re Anmuth Holdings LLC*, 600

B.R. 168, 191 (Bankr. E.D.N.Y. 2019)).  In applying the test, courts consider the following non-

exclusive factors:

> (i)    whether the creditors satisfied the statutory criteria for filing the
> petition;
>
> (ii)    whether the involuntary petition was meritorious;
>
> (iii)    whether the creditors made a reasonable inquiry into the relevant
> facts and pertinent law before filing;

(iv)      whether there was evidence of preferential payments to certain creditors or of dissipation of the debtor's assets;

(v)      whether the filing was motivated by ill will or a desire to harass;

(vi)      whether the petitioning creditors used the filing to obtain a disproportionate advantage for themselves rather than to protect against other creditors doing the same;

(vii)      whether the filing was used as a tactical advantage in pending actions;

(viii)      whether the filing was used as a substitute for customary debt-collecting procedures; and

(ix)      whether the filing had suspicious timing.

*Id.* (citing *In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328, 336 (3d Cir. 2015)).

58.      In this case, the involuntary case against Mr. Dafna was filed in bad faith on several grounds.

**A.      The Totality Of The Circumstances Indicate The Case Was Filed In Bad Faith**

59.      Each of the factors enunciated in *In re CNG Foods LLC* that relevant to this case in determining whether the totality of circumstances demonstrate a bad faith filing militates in favor of dismissal of the involuntary case against Mr. Dafna.

60.      First, as set forth above, the Petitioning Creditors do not qualify as petitioning creditors holding non-disputed claims under section 303(b) of the Bankruptcy Code.  Second, the Petitioning Creditors have not pointed to any evidence of  preferential payments to certain creditors or of dissipation of Mr. Dafna's assets.  Indeed, the Petitioning Creditors have not cited any justification for the timing of their decision to file the Involuntary Petition in March 2021.  Third, the Petitioning Creditors (and specifically Saddak Funding) is using the filing of the involuntary petition to obtain a disproportionate advantage for themselves rather than to protect against other creditors doing the same.  This is evident from the statements of the Petitioning Creditors' counsel

and the allegations in the Trustee Motion that reveal Saddak Funding's threats regarding Mr. Dafna's pending criminal indictment, which has nothing to do with Saddak Funding or the Foreclosure Action. Fourth, the filing is being used as a tactical advantage to attempt to pressure 1095 Fulton Street LLC to settle the Foreclosure Action, while at the same time circumventing the New York election of remedies statute that bars Saddak Funding from pursuing Mr. Dafna on his Guaranty, given the pendency of the action to foreclose on the Mortgage. Lastly, the Petitioning Creditors are using the involuntary bankruptcy process as a substitute for customary debt-collecting procedures.

### B.    The Involuntary Petition Was Filed For Improper Uses

61.    In addition, the involuntary case was filed in bad faith for improper uses. As this Court noted, "[t]he bankruptcy court cannot properly be employed as a rented battlefield, to achieve ends for which it never was intended." *See In re Anmuth Holdings LLC*, 600 B.R. at 193-94. The filing of involuntary case to coerce a settlement is bad faith. *Id.* at 193. Here, the Petitioning Creditors (and particularly Saddak Funding) all but admit, through counsel, that the Involuntary Petition was filed against Mr. Dafna to coerce him to resolve Saddak Funding's claims in the Foreclosure Action. Mr. Jacobs's email clearly ties the filing of the Involuntary Petition to "the satisfactory resolution of your clients *[sic]* issues." *See* <u>Exhibit M</u>. He expressly and unabashedly states that he was retained for alternat avenues of recourse *<u>against 1905 Fulton</u>*.

62.    The Foreclosure Action was filed in August 2018. The criminal indictment against Mr. Dafna was filed in September 2019. The confession of judgment that the Petition Creditors cite on page 5 of the Trustee Motion was entered against Mr. Dafna in September 2019. (*See* Exhibit E to the Trustee Motion.) There was no event since that time precipitating the sudden commencement of the involuntary case against Mr. Dafna in March 2021. Rather, after experiencing multiple setbacks in the Foreclosure Action, Saddak Funding hired a new lawyer in

its Foreclosure Action who is using the commencement of this involuntary case to pressure Mr.

Dafna to settle  on terms more favorable than Saddak Funding has been able to negotiate in the 31

months since the Foreclosure Action was commenced.

63.　　　It is also bad faith to file an involuntary for an improper use by seeking to use the

bankruptcy court as a substitute for customary collection procedures.  "Several courts hold that

debt collection is an improper purpose for filing an involuntary petition under § 303.   The

Bankruptcy Code was not intended to permit a single creditor who is owed a relatively small debt

to put a debtor into involuntary bankruptcy, negotiate a settlement and walk away.  Bad faith has

been found to exist when a creditor's actions amount to an improper use of the Bankruptcy Code

as a substitute for customary collection procedures.  The 8th Circuit has stated that a creditor does

not have a special need for bankruptcy relief if it can go to state court to collect a debt.  The remedy

of involuntary bankruptcy was not intended to be a substitute for ordinary debt procedures."  *In re

Tichy Elec. Co.*, 332 B.R. 364, 374 (Bankr. N.D. Iowa 2005) (citations and quotations omitted).

64.　　　That is precisely the improper use articulated by the email sent by counsel for the

Petitioning Creditors threatening to file the involuntary case against Mr. Dafna.  Rather than

continuing the effort to collect on its debt in the Foreclosure Action through customary state court

procedures, counsel for the Petitioning Creditors boldly asserted in his email that his firm was

retained to seek "alternative avenues of recourse against 1905 Fulton St LLC," including,

apparently, by filing an involuntary case against Mr. Dafna.

65.　　　Saddak Funding urges this Court to hold that foreclosing mortgagees, who have

already sued their guarantors for deficiency judgments, can switch tactics midstream if their

foreclosure actions does not proceed as hoped, and resort to using the federal bankruptcy courts to

commence involuntary cases against their guarantors.  *See IN re Jr. Food Mart of Arkansas, Inc.*,

241 B.R. 423, 427-28 (Bankr. E.D. Ark. 1999) ("[D]issatisfaction with another court's rulings, or the perceived untimeliness of rulings, is not a reason to file a bankruptcy case.  Indeed, such a filing may constitute an abuse of the bankruptcy process.").  Such a holding by this Court would invite endless litigation and transform this Court into a collections court for secured creditors who are not satisfied with their bargained-for collateral and who are disappointed that their originally selected forum for enforcing their loan documents has not given them the relief they seek as quickly as they prefer.

66.     It is no coincidence that the email threatened an involuntary petition against Mr. Dafna (against whom Saddak Funding asserts a claim under the Guaranty), even though Saddak Funding chose to commence the Foreclosure Action to foreclose on the mortgage given by 1905 Fulton, and the Foreclosure Action is still pending.  This is because New York's election of remedies statute prohibits a lender from suing on a note and guaranty if it elects to foreclose on the mortgage.  *See, e.g., In re South Side House, LLC,* 470 B.R. 659, 673-74 (Bankr. E.D.N.Y. 2012); *Aurora Loan Servs., LLC v. Lopa*, 88 A.D. 3d 929, 932 N.Y.S.2d 496 (2d Dep't 2011).  This "alternative avenue of recourse" employed by the Petitioning Creditors effectively converts the bankruptcy court into a substitute collection device, a result the Court should not countenance.

67.     It is also no coincidence that Mr. Jacobs repeatedly communicated with Mr. Dafna's criminal defense attorneys and not with Mr. Dafna's counsel in the Foreclosure Action regarding the filing of Involuntary Petition and the Trustee Motion.  He invokes Mr. Dafna's indictment, falsely claiming that Saddak Funding was victimized by short sales.  Mr. Jacobs's invitation that the Government attorney who is prosecuting the criminal action to participate in the hearing on the Trustee Motion speaks volumes regarding his true intent to harass and intimidate Mr. Dafna.

68.     Moreover, the Trustee Motion's baseless request not only for an interim trustee but also for a preliminary injunction affecting companies of businesspersons who have done business with Mr. Dafna over the years, also evidences the Petitioning Creditors' abuse of the bankruptcy process to achieve their parochial goals.

## IV.    EVEN IF AN ORDER FOR RELIEF COULD BE ENTERED, ABSTENTION UNDER SECTION 305 OF THE BANKRUPTCY CODE IS WARRANTED

69.     Although Mr. Dafna submits that this involuntary case should be dismissed on the grounds asserted above, even if the Court were not inclined to dismiss the Involuntary Petition for the reasons stated above, this Court should exercise its discretion and abstain and dismiss the case. Section 305(a)(1) provides for abstention as follows:

> (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
>
> (1) the interests of creditors and the debtor would be better served by such dismissal or abstention.

11 U.S.C. § 305(a)(1).

70.     Courts consider a number of factors in determining whether a case should be dismissed under section 305(a)(1), including the following:

> (1) economy and efficiency of administration; (2) whether another forum is available to protect the interest of both parties or there is already a pending proceeding in a state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving the equitable distribution of assets; (5) whether the debtor and creditors are able to work out a less expensive out-of-court arrangement which better serves all interest in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

In re Grigoli, 151 B.R. 314, 320 (Bankr. E.D.N.Y. 1993).

71.    Here, every relevant factor militates in favor of the Court's abstention and dismissal of the Involuntary Petition.  Factors four through six are not applicable in this case.  First, returning the dispute between Saddak Funding and Mr. Dafna to the State Court would further the goal of judicial economy.  The Foreclosure Action has been pending in the State Court for nearly three year; economy and efficiency of administration clearly would be better served by abstention. There is no reason to snatch the summary judgment motion out of the hands of the State Court. Second, the State Court is another forum that is not only available to adjudicate this dispute, but has been doing so since 2018.  This factor favors abstention.  Third, federal proceedings are not necessary to reach a just and equitable solution, because the Foreclosure Action involves solely state law issues and remedies.  This factor favors abstention.  Lastly, the Petitioning Creditors have never articulated a justification for seeking bankruptcy jurisdiction ***at this time***.  While Saddak Funding, in its Trustee Motion, alludes to Mr. Dafna's criminal indictment, that indictment occurred in September 2019, and the Involuntary Petition was not filed until March 2021.  This factor also favors abstention.

72.    Moreover, in cases where the involuntary petition is essentially a two-party dispute, and a proceeding in another forum is available to adjudicate the dispute, a court should exercise its discretion to abstain under section 305 of the Bankruptcy Code.  *See, e.g., In re Mountain Dairies, Inc.*, 372 B.R. 623, 634-35 (Bankr. S.D.N.Y. 2007) ("Even if Schneider-Valley were an eligible petitioner under 11 U.S.C. § 303, this Court would be compelled to abstain pursuant to 11 U.S.C. § 305 because this is essentially a two-party dispute for which the parties have adequate remedies in state court.  The bankruptcy court is not a collection agency.") (footnote and citations omitted); *In re Selectron Mgmt. Corp.*, 2010 WL 3811863 (Bankr. E.D.N.Y. Sep. 27, 2010) ("The Petitioning Creditor cannot utilize the bankruptcy process and wield a chapter 7 trustee as a

weapon in its attempts to recover on its Judgment against the Alleged Debtor.  … [T]he instant involuntary petition is a two-party dispute, and it is not the function of the bankruptcy court to act as a collection device for judgment creditors.").  Dismissal under section 305 of the Bankruptcy Code is appropriate where the "case is a two party dispute which is already being litigated in a pending state court foreclosure case."  *C&C Dev. Group, LLC*, 2012 WL 1865422 (Bankr. S.D. Fla. May 22, 2012) (dismissing case and noting that petitioning creditor "was dissatisfied with its progress in the State Court [foreclosure] Action, prompting the belated filing of the Involuntary Petition").

73.     The case here is essentially a two-party dispute between Mr. Dafna and Saddak Funding.  That dispute is being litigated in the Foreclosure Action in the State Court, where is has been pending since 2018, and the parties have submitted papers relating to Saddak Funding's third request for summary judgment and a judgment of foreclosure and sale.  Notably, 1905 Fulton and Mr. Dafna have raised in the State Court Foreclosure Action the issue that the loan provides for an effective rate of interest that is criminally usurious and unenforceable.  This issue can, and should be, decided by the State Court.  Saddak Funding should not be permitted, at this late juncture, to move this dispute to this Court for adjudication, and away from the court that has not ruled in its favor to date.  Under these circumstances, Mr. Dafna respectfully submits that abstention under section 305(a)(1) is appropriate.

WHEREFORE, Tomer Dafna respectfully requests that this Court enter an order dismissing the Involuntary Petition, reserve Mr. Dafna's right to seek damages and sanctions against the Petitioning Creditors and their counsel, and grant such other relief as may be just and proper.

Dated: New York, New York
April 19, 2021

RUBIN LLC

By: ___*/s/ Paul A. Rubin*___
Paul A. Rubin
Hanh V. Huynh

345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel: 212.390.8054
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for Alleged Debtor Tomer Dafna*