RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel:  212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for Alleged Debtor Tomer Dafna*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 7 (Involuntary) |
|  | : |  |
| TOMER DAFNA, | : | Case No.:  21-40678-nhl |
|  | : |  |
| Alleged Debtor. | : |  |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### ALLEGED DEBTOR'S REPLY TO PETITIONING CREDITORS ' OBJECTION TO MOTION TO DISMISS INVOLUNTARY PETITION PURSUANT TO 11 U.S.C. §§ 105(a) AND 303, OR, IN THE ALTERNATIVE, PURSUANT TO 11 U.S.C. § 305(a)(1)

Tomer Dafna, the alleged debtor herein, by his counsel, Rubin LLC, submits this reply (the

"Reply") to the objection (the "Objection") [ECF No. 16] filed by Saddak Funding LLC ("Saddak

Funding") and Jerome Williams (collectively, the "Petitioning Creditors") to Mr. Dafna's  motion

(the "Motion")[1] [ECF No. 14] to dismiss, pursuant to sections 105(a), 303 and/or 305 of title 11

of the United States Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure

1011, the involuntary petition (the "Involuntary Petition") [ECF No. 1] that the Petitioning

Creditors filed against Mr. Dafna.  In support of this Reply, Mr. Dafna respectfully represents as

follows:

---

[1] Capitalized terms not defined in this Reply shall have the meaning ascribed to them in the Motion.

## PRELIMINARY STATEMENT

1.     The Objection is more notable for what it does not say than for what it does say. The Objection is conspicuously silent on three key points:  (i) it does not address whether Saddak Funding's mortgage loan violates New York's *criminal* usury statute, which may be raised as a defense by corporate borrowers and their individual guarantors; (ii) the Petitioning Creditors ignore this Court's decision in *In re Zapas*, 530 B.R. 560, 567 (Bankr. E.D.N.Y. 2015), which held that multiple judgment creditors on a single judgment are treated as separate creditors holding separate claims for the purposes of the numerosity requirement of section 303(b); and (iii) the Petitioning Creditors do not apply any of the factors that courts, including this Court, always take into consideration in determining whether to abstain from exercising jurisdiction over an involuntary case.[2]

2.     In each case, the Petitioning Creditors' failure to address these points is fatal to the Involuntary Petition.  First, the dispute concerning whether the terms of the Saddak Funding loan are criminally usurious was raised in the Foreclosure Action.  There is a bona fide dispute as to Saddak Funding's claim, rendering Saddak Funding ineligible to be a petitioning creditor.  Second, the clear holding in *In re Zapas* precludes the Petitioning Creditors from proceeding with the Involuntary Petition (even if the Petitioning Creditors were eligible under section 303(b)), because Mr. Dafna has more than twelve creditors and there are not three or more petitioning creditors.

---

[2] While the Petitioning Creditors are silent on these key points, they recklessly repeat blatant falsehoods, engage in inflammatory and hyperbolic rhetoric, and lob reckless, unsubstantiated accusations and unattributed hearsay.  The Objection is filled with unsupported incendiary language about Mr. Dafna's supposed "propensity for fraud."  The Petitioning Creditors even stoop to repeat their lie that Mr. Dafna sent inappropriate text messages to Saddak Funding's principal, Mr. Crispin.  But the Petitioning Creditors admit that those messages were sent by someone other than Mr. Dafna, and in fact, were sent to someone other than Mr. Crispin.  The Petitioning Creditors' exaggerations and accusations do not compensate for the legal insufficiency of their Involuntary Petition.

Lastly, application of the abstention factors militates in favor of abstention.  Each of these points provides a separate, independent basis to dismiss the Involuntary Petition.

3.       Opposing counsel admits that he has been campaigning to recruit petitioning creditors since even before the commencement of this involuntary case on March 18, 2021 (more than two months ago).  Nevertheless, it appears that Saddak Funding is the sole petitioning creditor still pursuing this ill-conceived strategy to force Mr. Dafna into bankruptcy.  The ECF docket entry reflects that the Objection was filed on May 25, 2021 on behalf of both Petitioning Creditors.  But Jerome Williams decided to stipulate to vacate his default judgment and to dismiss the Slip and Fall Case as against Mr. Dafna.  Obviously, Jerome Williams has no right to or interest in pursuing the Involuntary Petition.

4.       Even if (a) Jerome Williams were an eligible petitioning creditor, and (b) the Saddak Funding claim were not subject to bona fide dispute, the inability of the Petitioning Creditors and their counsel to convince any qualifying creditors to join in the Involuntary Petition requires dismissal of this case.  The documentation provided by Mr. Dafna (which was attached to his declaration filed as Exhibit Q to the Motion) demonstrates the existence of more than twelve creditors that are not insiders and whose claims are not subject to bona fide dispute.

5.       In sum, the Petitioning Creditors have not provided any meaningful response to the bona fide disputes raised by Mr. Dafna with respect to their claims.  There are fewer than three petitioning creditors and Mr. Dafna has more than twelve creditors.  Alternatively, this case is a two party dispute and all of the factors weigh in favor of abstention.  Accordingly, the Involuntary Petition should be dismissed.

## ADDITIONAL RELEVANT FACTS

6.       As set forth in the Motion, Jerome Williams obtained a default judgment against Mr. Dafna in the Slip and Fall Case in May 2019, even though Mr. Dafna was never served with

a complaint or a motion for default judgment in the action.  In fact, Mr. Dafna was not aware of the action or Jerome Williams's judgment until March 2021.

7.      On April 19, 2021, state court counsel for Mr. Dafna moved by order to show cause to vacate the default judgment against Mr. Dafna.  After the motion to vacate was filed, Jerome Williams agreed to vacate the default judgement and to dismiss Mr. Dafna from the Slip and Fall Case.  On May 10, 2021, the State Court so ordered the stipulation to vacate the default judgment and so ordered the stipulation of discontinuance of the Slip and Fall Case.  *See* So-Ordered Stipulation to Vacate Default Judgment, annexed hereto as Exhibit A, and So-Ordered Stipulation of Discontinuance of Action, annexed hereto as Exhibit B.

8.      Accordingly, Jerome Williams does not qualify as a petitioning creditor under section 303 of the Bankruptcy Code.  The sole basis for his purported status as a creditor (the default judgment improperly entered against Mr. Dafna in the Slip and Fall Case) has been vacated.  Mr. Williams no longer purports to hold any claim against Mr. Dafna.

9.      In the Objection, the Petitioning Creditors recklessly argue, without any evidence or support, that the "suspicious timing and nature of the stipulation" reflects fraudulent behavior by Mr. Dafna.  *See* Objection 26-27.  In fact, it was Jerome Williams who decided to stipulate to the relief sought by Mr. Dafna, rather than to contest the merits of the motion to vacate.  There is nothing suspicious or inappropriate about Mr. Williams's decision not to pursue his claim that had no merit and to concede to vacate a default judgment, which should not have been entered against Mr. Dafna in the first place.  Indeed, if opposing counsel believed there were suspicious circumstances surrounding Jerome Williams's entry into the stipulation to vacate and dismiss, he could have simply asked his own client about it.  Instead, he chose to file a public document

4

accusing Mr. Dafna of fraudulent behavior and recklessly implying that Mr. Dafna paid off Jerome Williams.

## **REPLY**

### I.   **THE INVOLUNTARY PETITION SHOULD BE DISMISSED BECAUSE THE PETITIONING CREDITORS' CLAIMS ARE SUBJECT TO BONA FIDE DISPUTE AS TO LIABILITY AND AMOUNT**

10.     Mr. Dafna argued in the Motion that Jerome Williams does not qualify as a petitioning creditor because his claim (based on the default judgment) was subject to bona fide dispute.  Any doubt as to Mr. Williams's ineligibility has now been put to rest since the default judgment has been vacated and the Slip and Fall Case dismissed as to Mr. Dafna.  Other than the Petitioning Creditors' reckless and unsubstantiated innuendo that Mr. Dafna paid off Jerome Williams to agree to vacate the default judgment, the Objection is silent as to the eligibility of Jerome Williams to be a petitioning creditor.  There is really only one petitioning creditor left in this case—Saddak Funding.

11.     As set forth in the Motion, Saddak Funding is not qualified to be a petitioning creditor under section 303(b) of the Bankruptcy Code, because its claim is subject to bona fide dispute on the grounds that (i) the terms of the underlying mortgage loan are criminally usurious, and (ii) commencement of an involuntary bankruptcy case based on a guaranty claim following years of failure in a mortgage foreclosure action is an impermissible end run around New York's election of remedies statute.  In their Objection, the Petitioning Creditors fail to address Mr. Dafna's citation to cases that support the proposition that an individual guarantor of corporate obligations can raise ***criminal*** usury as a defense.  Instead, the Petitioning Creditors argue that there can be no bona fide dispute as to Saddak Funding's claim because Mr. Dafna (as an individual guarantor of corporate debt) is prohibited from asserting usury as a defense.  *See* Objection ¶¶ 9,

12.  But the statutes and cases cited by the Petitioning Creditors relate only to *civil* usury, not criminal usury.

   **A.    Criminal Usury**

   12.    A corporation may assert criminal usury as an affirmative defense.  *See Colonial Funding Network, Inc. for TVT Capital, LLC v. Epazz, Inc.*, 252 F. Supp. 3d 274, 280 (S.D.N.Y. 2017).  "[A] loan that is criminally usurious is void."  *Kingsize Entm't v. Martino*, 63 N.Y.S.3d 714, 715 (2d Dep't 2017); *see also Blue Wolf Cap. Fund II, LP v. Am. Stevedoring*, 961 N.Y.S.2d 86, 90 (1st Dep't 2013) (same).  The default interest rate may be considered in determining whether a loan is criminally usurious.  *See LG Capital Funding, LLC v. Vapor Group, Inc.*, 2018 WL 3193209 at *3 ("However, in a recent decision, Judge Cathy Seibel engaged in a comprehensive analysis of state and federal cases and convincingly determined that the New York Court of Appeals would hold that the criminal usury cap limits interest charged on debts to 25% annually, even for defaulted debts.") (quotation and citation omitted).

   13.    Here, Saddak Funding has sought to enforce loan documents providing for default interest at a rate of 24%, plus late fees of 5%, plus legal fees of 15% of the balance due, the aggregate of which may make the loan unenforceable under New York's criminal usury statute. Annexed hereto as Exhibit C is the Note, which contains the provision for 24% default interest and 5% late fees (at page 2), and annexed hereto as Exhibit D is the Mortgage, which contains the provision for 15% legal fees (at Paragraph P of the Rider).  Specifically, the legal fees provision requires that, if Saddak Funding retains counsel to recover amounts due under the Mortgage, to foreclose on the Property, or following a default under the Mortgage, Mr. Dafna "agrees to pay reasonable counsel fees, *the amount of which to [sic] hereby expressly fixed at fifteen (15%) of the then unpaid balance of the MORTGAGE debt*."  Mortgage p. 2 (emphasis added).

14.    Once the late fees and legal fees, which are hidden interest, are included in the effective interest rate for the loan, interest on the Saddak Funding loan exceeds the cap of 25% under New York's criminal usury statute.  In the context of determining whether fees are actually hidden interest, "when fee payments do not actually reimburse lenders for expenses associated with the loan, and instead are disguised loan payments, such fee expenses are considered in determining the interest rate.  The question of the purpose of a fee payment is an issue of fact." *LG Capital Funding, LLC v. Vapor Group, Inc.*, 2018 WL 3193209, at *3 (E.D.N.Y. June 28, 2018) (citation omitted).  Here, the legal fee provision contained in the Mortgage does not reimburse Saddak Funding for legal fees actually incurred; rather, it increases the cost of the loan at a fixed percentage amount.  This is hidden interest.[3]

15.    As noted in the Motion, loan documents containing similar terms as the Note and Mortgage (and thus the Guaranty) may be found unenforceable under New York's criminal usury statute.  *See, e.g., Union Capital LLC v. Vape Holdings Inc.*, 2017 WL 1406278 (S.D.N.Y. Mar. 31, 2017) (for criminal usury defense under New York law, "the Court may not enforce a default interest rate that exceeded an overall effective interest rate of 25%.  If, as Vape alleges, the due diligence and **legal fees** Union charged as part of the Note and SPA were in fact ***hidden interest payments***, then imposing a default interest of 24% would exceed the statutory limit.") (emphasis added).

---

[3] In their Objection, the Petitioning Creditors attempt to shield the 5% late fee and 15% legal fee from attack, citing to cases that do not involve mortgage loans and are plainly inapposite.  *See* Objection ¶¶ 10-11, citing *Adar Bays LLC v. GeneSYS ID, Inc.*, 341 F. Supp. 3d 339 (S.D.N.Y. 2018) ($2,000 in attorney's fees were actual reasonable expenses of the loan and not hidden interest for usury purposes); *Sogeti USA LLC v. Whirlwind Bldg. Sys., Inc.*, 274 Fed. Appx. 105 (2d Cir. 2008) (1.5% monthly service charge on unpaid invoices under a professional services contract were not hidden interest for usury purposes); *Feinberg v. Old Vestal Road Assocs.*, 157 A.D.2d 1002 (3d Dep't 1990) (transaction at issue was a finder's fee arrangement, not a usurious loan); *F.K. Gailey Co. v. Wahl*, 262 A.D.2d 985 (4th Dep't 1999) (2% late fee charged under a gasoline delivery warranty was not a loan for purposes of usury); *Waterbury v. City of Oswego*, 251 A.D.2d 1060 (4th Dep't 1998) (10% late fee on city's water bill not a loan for purposes of usury); *Protection Indus. Corp. v. Kaskel*, 262 A.D.2d 61 (1st Dep't 1999) (monthly late payment charges in mechanic's lien action not a loan for purposes of usury).

16.     Thus, there is at least a bona fide dispute as to whether the Saddak Funding claim is based on an unenforceable usurious loan.  Importantly, not only is there a bona fide dispute, this dispute has been presented to the State Court in the pending Foreclosure Action.

**B.     Election of Remedies**

17.     The Saddak Funding claim is based on a Guaranty that Saddak Funding is not permitted to sue to enforce until it has exhausted its remedies in the Foreclosure Action.  Because Saddak Funding elected to foreclose on the Mortgage, it is barred by the election of remedies statute under New York law from instituting a new action in order to collect on the Guaranty.

18.     The Petitioning Creditors rely on *In re 1020 Warburton Ave. Realty*, 127 B.R. 333 (Bankr. S.D.N.Y. 1991), and *Les Placements v. Rosenberg*, 1997 WL 1048897 (E.D.N.Y. 1997), to refute Mr. Dafna's argument that the filing of the Involuntary Petition is an impermissible circumvention of the New York election of remedies statute.  Their reliance on those cases, however, is misplaced.  Those cases involved the commencement of involuntary bankruptcy cases against mortgage borrowers where an action against the guarantor was already pending in state court.  In those cases, the courts held that the filing of an involuntary petition did not violate the election of remedies because an involuntary chapter 11 case against a mortgagor was not tantamount to a foreclosure action.

19.     Here, Mr. Dafna has asserted that, because Saddak Funding has elected to foreclose on the Mortgage, it is barred by the election of remedies statute under New York law from instituting a new action so it can enforce and collect on the Guaranty.  *See* RPAPL § 1301(3); *In re South Side House, LLC,* 470 B.R. 659, 673-74 (Bankr. E.D.N.Y. 2012) (noting that election of remedies rule applies to guaranties).  There can be no denying that Saddak Funding filed the Involuntary Petition in order to collect on the Guaranty from Mr. Dafna, even though it has not exhausted its remedies in the Foreclosure Action.  Unlike in *1020 Warburton Ave. Realty* and *Les*

*Placements v. Rosenberg,* the filing of the Involuntary Petition is tantamount to an action to collect on the Guaranty and an impermissible end-run around the election of remedies statute.

20.    Accordingly, because its claim is subject to bona fide dispute, Saddak Funding does not qualify to be a petitioning creditor under section 303(b) of the Bankruptcy Code.  The Court's inquiry should end here.  The Involuntary Petition must be dismissed for this reason alone.

## II.    THE INVOLUNTARY PETITION SHOULD BE DISMISSED BECAUSE THERE ARE FEWER THAN THREE PETITIONING CREDITORS

21.    Even if Saddak Funding were determined to be a qualifying petitioning creditor, the Involuntary Petition still must be dismissed under section 303(b)(1) of the Bankruptcy Code, because three petitioning creditors are needed to file an involuntary petition, where, as here, the alleged debtor has twelve or more creditors.  *See* 11 U.S.C. § 303(b)(1) & (2).

22.    Because Mr. Dafna has provided a schedule of fifteen creditors, together with documentation from creditors supporting their claims, which contains information concerning the nature and amounts of their claims, the burden shifts to the Petitioning Creditors to show that Mr. Dafna has fewer than twelve creditors.  *See In re Zapas*, 530 B.R. 560, 567 (Bankr. E.D.N.Y. 2015).  The Petitioning Creditors cannot, as a matter of law, demonstrate that Mr. Dafna has fewer than twelve creditors.

23.    First, the Petitioning Creditors assert that five creditors (the "Five Judgment Creditors")[4] identified by Mr. Dafna in his declaration annexed as Exhibit Q to the Motion should only count as one creditor because the claims of the Five Judgment Creditors are based on the same confessed judgment against Mr. Dafna.  Searching far and wide, the Petitioning Creditors cite to non-binding cases from across the country, which apply different state laws, and involve

---

[4] The Five Judgment Creditors are 485-497 Ninth Avenue Partners LLC; 325 Third Ave LLC; 126 Bapaz LLC; 3800 Broadway LLC; and Meyerson Management.

differing sets of facts.  *See In re T.P. Hendon & Co.*, 87 B.R. 204 (Bankr. M.D. Fla. 1988) (promissory note made payable to single entity); *In re McMeekin*, 16 B.R. 805 (Bankr. D. Mass. 1982) (court looked beyond judgment to underlying promissory note and applied Massachusetts and Florida U.C.C. to hold that promissory note made payable to two or more persons is enforceable by only all of them); *In re Averil, Inc.*, 33 B.R. 562 (Bankr. S.D. Fla. 1983) (applying Florida U.C.C. to debtor's joint obligation to two individuals for their undivided interest in corporate stock sold to the debtor); *In re Central Hobron Assocs.*, 41 B.R. 444 (D. Haw. 1984) (finding one unpaid debt where property was purchased for a single price and balance of purchase price remained unpaid because of dispute concerning the entire purchase price); *In re Forster*, 465 B.R. 97 (Bankr. W.D. Va. 2012) (applying Virginia U.C.C. to find single obligation where promissory note was payable to husband "and" wife); *In re Rosenberg*, 414 B.R. 826 (Bankr. S.D. Fla. 2009) (finding only one claim against a debtor under a limited guaranty where the underlying lease obligations were restructured by a settlement agreement that modified and consolidated the obligations into a single obligation owed to one entity); *In re Edwards*, 501 B.R. 666 (Bankr. N.D. Tex. 2013) (looking beyond judgment entered by probate court to find that award was not easily divisible between judgment creditors and thus constituted a single claim).

24.     Significantly, the Petition Creditors ignore a recent case by this Court that is directly on point, in which this Court held that, for the purposes of numerosity under section 303(b), four judgment creditors holding a single state court default judgment were separate creditors, each of whom held a claim it could enforce against the alleged debtor. *See In re Zapas*, 530 B.R. 57-71.  The *Zapas* court examined several cases, including cases that were cited by the Petitioning Creditors, and found them distinguishable or unpersuasive, and declined to follow them.  The Court found that "the Judgment Creditors each have an enforceable 'right to payment'

derived from the $656,683.15 default judgment issued by the state court.  The judgment is an enforceable right to payment—a legal claim that has been reduced to judgment." *Id.* at 569.  The Court further noted that nothing under New York law prevents each of the judgment creditors from enforcing or executing on the judgment without the joinder of the others. *Id.* at 571.

25.     Here, the language of confessed judgment removes any ambiguity about the ability of each of the Five Judgment Creditors to separately execute on the judgment:  "**ADJUDGED**, that Plaintiffs 485-497 NINTH AVE PARTNERS LLC, 325 THIRD AVE LLC, 126 BAPAZ LLC, 3800 BROADWAY LLC, and MEYERSON MANAGEMENT LLC … have judgment, jointly and ***severally***, and recover against … Defendant TOMER DAFNA … in the amount of $9,000,000.00 … and that the Plaintiffs have execution thereon."  Judgment By Confession (emphasis added), annexed as <u>Exhibit Q (1-6)</u> of the Motion.  There is no doubt that, here, just like the judgment creditors in *In re Zapas*, the Five Judgment Creditors constitute five separate creditors, each holding a separate claim against Mr. Dafna for the purposes of section 303(b).

26.     Next, the Petitioning Creditors argue that the Verizon should be removed from the creditor list because its claim  is based on a small, monthly bill.  This time, the Petitioning Creditors rely on a case from 1921 that interpreted the old Bankruptcy Act.  *See* Objection ¶ 41 (citing *In re Branche*, 275 F. 555 (N.D.N.Y. 1921)).  Again, the Petitioning Creditors willfully ignore more recent caselaw in this District that holds that small, recurring claims must be included as creditors for purposes of numerosity under section 303(b).  *See In re Fischer*, 202 B.R. 341, 349 (E.D.N.Y. 1996); *see also In re Elsa Designs, Ltd.*, 155 B.R. 859 (Bankr. S.D.N.Y. 1993) (extensive discussion by Judge Brozman).  This is the majority position, it is followed by circuit courts of appeal, and it is properly grounded upon a plain reading of the applicable statutes.  *See, e.g., In re Rassi*, 701 F.2d 627, 632 (7th Cir. 1983); *In re Okamoto*, 491 F.2d 496, 498 (9th Cir. 1974); *Theis*

*v. Luther*, 151 F.2d 397 (8th Cir. 1945).  Accordingly, there is no valid reason to exclude Verizon from the creditor list simply because it is a small monthly bill.

27.      The Petitioning Creditors also contend that law firms with claims against Mr. Dafna for unpaid fees must also be omitted, relying on nothing more than the bare-naked accusation that these claims were "overtly included as schemes and artifices to avoid letter and spirt of law and should not be tolerated by this Court."  Objection ¶ 42.  The Petitioning Creditors cavalierly accuse these law firms of participating in "schemes and artifices" by sending legal bills.  The law firms are creditors holding legitimate claims for unpaid legal services.  There is absolutely no basis to exclude them from the creditor list.

28.      Lastly, despite the documentation provided, the Petitioning Creditors argue they are entitled to discovery concerning the creditor list.  This is nothing more than a delay tactic intended to afford the Petitioning Creditors more time to attempt to convince creditors to join in an Involuntary Petition that was filed over two months ago.  A delay would be prejudicial to Mr. Dafna and contrary to the express requirement in Bankruptcy Rule 1013 that the Court determine the issues of a contested involuntary petition "at the earliest practicable time and forthwith enter an order for relief, dismiss the petition, or enter any other applicable order."  FED. R. BANKR. P. 1013(a).  The only bases that the Petitioning Creditors have articulated to exclude creditors are purely legal questions regarding whether the Five Judgment Creditors should be counted as one creditor and whether Verizon should be omitted because it is a creditor with a small recurring claim.  The Court can decide at this time the purely legal issues presented without the need for discovery.  For example, the *Zapas* court found that section 303(b)(1) applied without the need for discovery or to review additional evidence.[5]

---

[5] The *Zapas* court noted as follows:  "The Petitioning Creditors assert that some of the creditors on Zapa's initial list of creditors are fraudulent entries, and that most of the creditors listed are personal friends and business associates of

29.     Moreover, the documentation relating to the creditor claims have been provided in the exhibits to Mr. Dafna's declaration.  The invoices provided were created and delivered by the creditors; these are not documents prepared by Mr. Dafna.  *See* Exhibit Q (8-15) of the Motion. The documents, on their face, demonstrate claims against Mr. Dafna.  There is no basis to seek additional discovery to determine the legitimacy of the claims.  The request for discovery is particularly disingenuous, because the Petitioning Creditors were provided the creditor list when it was filed on April 19, 2021, more than a month ago, and opposing counsel claims to have performed thorough and diligent research to find creditors to join in the Involuntary Petition.

### III.     THE INVOLUNTARY PETITION SHOULD BE DISMISSED BECAUSE IT WAS FILED IN BAD FAITH

30.     As set forth in the Motion, the Involuntary Petition was filed in bad faith.  Other than the self-serving Declaration of Leo Jacobs filed with the Objection, the Petitioning Creditors do not address Mr. Dafna's arguments that the Involuntary Petition was filed in bad faith.  It is undisputed that opposing counsel identified himself as having been retained by Saddak Funding as special counsel in the Foreclosure Action, and that he was seeking to find "alternative avenues of recourse against *1905 Fulton St LLC*."  The Petitioning Creditors' failure to address this undeniable fact does not make it disappear.

31.     After years of litigation in state court, Saddak Funding filed the Involuntary Petition in an effort to open a new forum for litigation so as to obtain a disproportionate advantage for itself.  Saddak Funding is using the involuntary bankruptcy process as a substitute for customary debt collection procedures.  By pursuing an involuntary proceeding to collect on a guaranty even

---

Zapas.  The Court finds that the Petitioning Creditors have not met their burden of showing that Zapas has fewer than 12 creditors.  The Petitioning Creditors did not specifically identify which creditors it believes were fabricated, nor did they show that if Zapa's list of alleged creditors were reduced in number that the number would be reduced to fewer than 12.  Therefore, § 303(b)(1) applies."  *In re Zapas*, 530 B.R. at 567.

while its foreclosure action is pending, Saddak Funding is asking this Court to invite a stream of new proceedings against individual guarantors of real estate loans. This Court was never intended to serve as a collections court for secured creditors who are not satisfied with their bargained-for collateral and who are disappointed that their state court foreclosure actions have not given them the relief they seek as quickly as they have demanded it.

## IV.    ALTERNATIVELY, ABSTENTION UNDER SECTION 305 OF THE BANKRUPTCY CODE IS WARRANTED

32.    This case is really a two-party dispute between Saddak Funding and Mr. Dafna and should not be heard by this Court. The Petitioning Creditors fail to apply the well-established factors that courts, including this Court, regularly consider in determining whether to abstain from exercising jurisdiction over an involuntary bankruptcy case. As set forth in the Motion, and not refuted in the Objection, every relevant factor militates in favor of the Court's abstention and dismissal of the Involuntary Petition. The interests of judicial economy clearly favor returning the Saddak Funding dispute to the State Court where the Foreclosure Action has been pending for nearly three years. The State Court is not merely another forum that is available to adjudicate this dispute, but it has been doing so since 2018 when Saddak Funding chose to file the Foreclosure Action in the State Court. Federal bankruptcy proceedings are not necessary to reach a just and equitable solution, because Saddak Funding's foreclosure action involves solely state law issues and remedies.

33.    The only argument that the Petitioning Creditors proffer as justification for the Court to retain jurisdiction is that, there might be a conviction in the criminal proceeding, and then there might be a forfeiture of assets at some unknown time in the future, and any assets recovered through such a forfeiture might not be distributed to creditors of Mr. Dafna. But the Petitioning Creditors' argument is not only highly speculative, it also makes no sense. On the one hand, the

Petitioning Creditors acknowledge that entry of an order for relief in this case would not stay Mr. Dafna's criminal proceeding. On the other hand, the Petitioning Creditors insist that a bankruptcy case is necessary because there may be a forfeiture in that same criminal proceeding. By the Petition Creditors' own admission, commencing an involuntary case against Mr. Dafna would do nothing to prevent a result that the Petitioning Creditors argue is imminent but that a bankruptcy filing would not be able to stop.

34.     Moreover, the unlikely prospect of a government forfeiture that might not benefit creditors of Mr. Dafna is nothing more than pretense for Saddak Funding to force Mr. Dafna into bankruptcy. The mere possibility of such a forfeiture has no effect on Saddak Funding, because it is foreclosing its lien on collateral of its borrower, 1905 Fulton, in the Foreclosure Action, and that collateral would not be subject to any forfeiture against Mr. Dafna.

35.     It is worth noting that the Petitioning Creditors have also exaggerated the risk of a potential forfeiture by falsely asserting that a *civil* forfeiture action has been commenced against Mr. Dafna. As already noted on the record of the hearing on April 14, 2021, no such action has been commenced against Mr. Dafna.

36.     Lastly, the notion that a government forfeiture is imminent is nothing more than baseless conjecture. Mr. Dafna has meritorious defenses in the criminal proceeding, which has languished for almost two years, and forfeiture would not occur unless and until the government somehow wins a conviction after trial. A trial date has not ben sent, no pretrial motions have been scheduled, and no superseding indictment has issued. In short, nothing has happened since the following of the indictment in 2019 that would raise concerns necessitating an involuntary bankruptcy filing to prevent harm to creditors of Mr. Dafna.

37.     Under these circumstances, Mr. Dafna respectfully submits that, to the extent the Court does not dismiss the Involuntary Petition under section 303, abstention under section 305(a)(1) is appropriate.

WHEREFORE, Tomer Dafna respectfully requests that this Court enter an order dismissing the Involuntary Petition, reserve Mr. Dafna's right to seek attorney's fees, damages and sanctions against the Petitioning Creditors and their counsel, and grant such other relief as may be just and proper.

Dated: New York, New York
         May 28, 2021

RUBIN LLC

By:   */s/ Paul A. Rubin*   
         Paul A. Rubin
         Hanh V. Huynh

345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel: 212.390.8054
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for Alleged Debtor Tomer Dafna*

# EXHIBIT A

## (SO-ORDERED STIPULATION TO VACATE DEFAULT JUDGMENT)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------------x
JEROME WILLIAMS,

                Plaintiff,                      Index No.: 503186/2017

      -against-

REDF EQUITIES, LLC, TOMER DAFNA, ISKYO ARONOV,    **STIPULATION TO VACATE**
DAVID AUGENSTEIN, and HERMAN MEISELS,    **DEFAULT JUDGMENT TO**
                           **BE SO ORDERED**
                Defendants.
-------------------------------------------------------------------x

        IT IS HEREBY STIPULATED AND AGREED by and between the undersigned

attorneys for the parties who have appeared herein, that whereas no party hereto is an infant,

incompetent person for who a committee has been appointed or conservatee and no person not a

party has an interest in the subject matter of the action, as follows:

        1.      That certain default judgment entered pursuant to CPLR Section 3215 in

favor of plaintiff Jerome Williams; and judgment after inquest dated May 23, 2019 and entered

on May 28, 2019, against defendant Tomer Dafna, in the amount of $457,282.00, shall be

vacated and set aside in its entirety as against defendant Tomer Dafna.

        2.      That the judgment that was entered on May 28, 2019 in the amount of

$457,282.00 is hereby vacated and any executions or restraints are hereby lifted.

        3.      That pursuant to CPLR Section 5015(b), the Clerk of this Court may

vacate the above-referenced default judgment without further notice to either party upon the

filing of this stipulation with the Clerk.

        4.      This stipulation may be executed in counterpart copies and by facsimile or

electronic signature with the same force and effect as original signatures.

1

Dated: Valley Stream, New York
May 6, 2021


ROSENBERG & STEINMETZ PC
*Attorneys for Defendant Tomer Dafna*
181 S. Franklin Avenue, Suite 604
Valley Stream, New York 11581
Phone: (212) 743-9904


By: _____
Rachelle Rosenberg

LAW OFFICE OF MILLER & MILLER, ESQS
*Attorneys for Plaintiff Jerome Williams*
26 Court Street, Ste 2511
Brooklyn, New York 11242
Phone: (718) 522-0023


By: _____
Andrew R. Miller, Esq.


So Ordered:

_____
HON. LAWRENCE KNIPEL
ADMINISTRATIVE JUDGE

2

# EXHIBIT B

# (SO-ORDERED STIPULATION
# OF DISCONTINUANCE)

Case 1-21-40678-nhl   Doc 17   Filed 05/28/21   Entered 05/28/21 17:05:31

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
------------------------------------------------------------------x
JEROME WILLIAMS,

               Plaintiff,

       -against-

REDF EQUITIES, LLC, TOMER DAFNA, ISKYO ARONOV,
DAVID AUGENSTEIN, and HERMAN MEISELS,

               Defendants.
------------------------------------------------------------------x

Index No.: 503186/2017

**STIPULATION WITHDRAW
OF MOTION AND OF
DISCONTINUANCE OF
ACTION**

IT IS HEREBY STIPULATED AND AGREED by and between the undersigned that:

    1.    Defendant Tomer Dafna's Order to Show Cause (Motion seq. 4) is hereby withdrawn.

    2.    The above-entitled action and all claims, counterclaims, and causes of actions are discontinued with prejudice as against Defendant Tomer Dafna, without cost to any party as against another.

    3.    No party herein is an infant, incompetent person for whom a committee has been appointed or conservatee and no person not a party has an interest in the subject matter of the action.

    4.    This stipulation may be executed in counterpart copies and by facsimile or electronic signature with the same force and effect as original signatures.

1

Dated: Valley Stream, New York
      May 6, 2021

ROSENBERG & STEINMETZ PC
*Attorneys for Defendant Tomer Dafna*
181 S. Franklin Avenue, Suite 604
Valley Stream, New York 11581
Phone: (212) 743-9904

By: _____
Rachelle Rosenberg

LAW OFFICE OF MILLER & MILLER,
ESQS
*Attorneys for Plaintiff Jerome Williams*
26 Court Street, Ste 2511
Brooklyn, New York 11242
Phone: (718) 522-0023

By: _____
Andrew R. Miller, Esq.

So ordered

2

# EXHIBIT C
# (NOTE)

Case 1-21-40678-nhl Doc 17 Filed 05/28/21 Entered 05/28/21 17:05:31

# NOTE

This Note is made on the 8th DAY OF OCTOBER, 2015 (this "**Note**") between **1905 FULTON STREET LLC**, having an address at 914 BEDFORD AVENUE, BROOKLYN, NEW YORK 11205 (the "**Borrower**") and **SADDAK FUNDING LLC**, a New York corporation having an address at 13 N CIRCLE DR, GREAT NECK, YORK 11021, (the "**Lender**").

**BORROWER'S PROMISE TO PAY PRINCIPAL AND INTEREST.** For value received, Borrower promises to pay to Lender the sum of the sum of **FOUR HUNDRED THOUSAND DOLLARS ($400,000.00)** lawful money of the United States, plus any interest accrued and other applicable costs and expenses in accordance with the terms of this Note. Amounts due under this note shall bear interest at rate of **TWELVE PERCENT (12%)** per annum (except following the occurrence and during the continuation of an Event of Default (as defined below), when the Default Interest (as defined below) shall be the applicable rate of interest).

**PAYMENTS.** All amounts due under this Note shall be due and payable on **August 1, 2015 for the next 12 consecutive months, maturing on July 1st, 2016, in the interest only monthly amount of TWO THOUSAND DOLLARS ($4,000).** Borrower shall pay any interest which has accrued and is not yet paid on any amount outstanding on the first business day of each calendar month for so long as any amounts are outstanding under this Note. All payments due under this Note shall be paid in immediately available funds to the Lender at **13 N CIRCLE DR, GREAT NECK, YORK 11021** or any other address as the Lender may designate from time to time to the Borrower.

**DEFAULT.** Notwithstanding the foregoing, all amounts due under this Note shall immediately become due and payable at the election of the Lender hereof, following the occurrence and during the continuation of any of the following events (each, an "**Event of Default**"):

(a)  Borrower fails to pay any amounts due under this Note within five (10) days of the date such amount was due;

(b)  Borrower fails to pay when due any indebtedness of the Borrower in an aggregate principal amount of FOUR HUNDRED THOUSAND DOLLARS ($400,000.00) or more;

(c)  default shall occur under any one or more indentures, agreements or other instruments under which any indebtedness of the Borrower in an aggregate principal amount of FOUR HUNDRED THOUSAND DOLLARS ($400,000.00) or more is outstanding and such default shall continue for a period of time sufficient to permit the holder or beneficiary of such indebtedness or a trustee thereof to cause the acceleration of the maturity of such indebtedness or any mandatory unscheduled payment, purchase or funding thereof;

(d)  Borrower shall (i) make an assignment for the benefit of creditors, (ii) apply for, seek, consent to, or acquiesce in, the appointment of a receiver, trustee or similar official for it or a substantial part of its property, (iii) seek relief under the United States Bankruptcy Code or (iv) suffer an involuntary petition in bankruptcy or receivership not vacated within thirty (30) days;

(e)  Borrower shall fail within thirty (30) days to pay, bond or otherwise discharge any judgment

FILED: KINGS COUNTY CLERK 08/22/2018 12:25 PM                INDEX NO. 517283/2018
NYSCEF DOC. NO. 2                                      RECEIVED NYSCEF: 08/22/2018

or order for the payment of money in excess of FOUR HUNDRED THOUSAND DOLLARS ($400,000.00) which is not stayed on appeal or otherwise being contested in good faith in a manner that stays execution thereof;

(f)     Borrower defaults in the performance of any obligation or covenant under this Note, the Mortgage executed on the date hereof which secures the obligations of the Borrower in connection with this Note (the "**Mortgage**") or any other documents executed in connection with the loan extended by the Lender to the Borrower (such documents, together with the Note and Mortgage, the "**Loan Documents**"), and such default continues for a period of ten (10) days following written notice of such default by the Lender to the Borrower;

(g)    any representation or warranty made by the Borrower in any of the Loan Documents is not true and correct in all material respects as of the date when such representation or warranty was made;

(h)    any representation or warranty made by **TOMER DAFNA** (the "**Guarantor**") in the Guaranty, executed by the Guarantor as the date hereof (the "**Guaranty**"), is not true and correct in all material respects as of the date when such representation or warranty was made;

(i)     the Guarantor defaults in the performance of any obligation or covenant of the Guaranty and such default continues for a period of ten (10) days following written notice of such default by the Lender to the Guarantor;

(j)     the Guaranty is not a valid, enforceable and binding obligation of the Guarantor;

(k)    the Guarantor shall (i) make an assignment for the benefit of creditors, (ii) apply for, seek, consent to, or acquiesce in, the appointment of a receiver, trustee or similar official for it or a substantial part of its property, (iii) seek relief under the United States Bankruptcy Code or (iv) suffer an involuntary petition in bankruptcy or receivership not vacated within thirty (30) days; and

(l)     the amounts due under this Note are not secured by a first-priority perfected security interest in the premises subject to the Mortgage.

Following an Event of Default, Borrower agrees to pay all costs and expenses incurred by Lender, including all reasonable attorney fees (including both hourly and contingent attorney fees as permitted by law) for the collection of any amounts due under this Note, and including reasonable collection charges (including, where consistent with industry practices, a collection charge set as a percentage of the outstanding balance of this Note) should collection be referred to a collection agency.

**DEFAULT INTEREST.** Following the occurrence and during the continuation of any Event of Default, any amounts due pursuant to this Note shall accrue interest at a rate equal to the lower of (i) 24**%** per centum per annum and (ii) the highest interest rate permissible under applicable law (such rate, the "**Default Interest**").

**LATE CHARGE AND FEES**.  In addition any Default Interest and any other rights that the Lender may have, Borrower shall pay a late charge equal to five (5%) percent of any payment which is not made within five (5) days of the date on which such payment was due and payable pursuant to this note. Any returned checks will be subject to a $75.00 fee.

**VOLUNTARY PREPAYMENT.**  Borrower may repay the amounts due under this Note, in whole but not in part, upon fifteen (15) days prior written notice to Lender stating the amount

to be prepaid and the date such prepayment will be made, so long as 3 or more monthly interest payments have been made. Prepayments prior to Borrower making 3 or more monthly interest payments are subject to a prepayment penalty equal to the difference between (i) the amount of 3 monthly interest payments and (ii) the amount of any interest payments made by the Borrower. Any prepayments will be applied (i) first to any additional charges then outstanding, (ii) to any outstanding interest, and (iii) to the principal that is owed under this Note. Borrower may not make any partial prepayments of the amounts due under this Note. In addition, if the loan is repaid between months 4 through month 12, Borrower shall pay an additional 10 days interest at closing.

**NO ASSIGNMENT BY BORROWER.** This Note, the Loan Documents, and any rights or obligations of the Borrower pursuant to the Note and the Loan Documents, may not be assigned by the Borrower without the prior written consent of the Lender.

**ASSIGNMENT AND PARTICIPATION BY LENDER.** Lender may assign this Note, the Loan Documents, and any rights and obligations of the Lender pursuant to this Note and the Loan Documents, in whole or in part, at any time without the consent of the Borrower. In addition, Lender may at any time sell to one or more purchasers ("Participants") participating interests in this Note and the amounts due pursuant to this note or any other interest of the Lender hereunder. In the event of any such sale by the Lender of participating interests to a Participant, the Lender's obligations under this Note to the Borrower shall remain unchanged, the Lender shall remain solely responsible for the performance thereof, the Lender shall remain the holder of any this Note for all purposes, and the Borrower shall continue to deal solely and directly with the Lender in connection with the Lender's rights and obligations under this Note and the Loan Documents. No Participant shall have the right to consent to any amendment to, or waiver of, any provision of this Note, except the Lender may provide in its agreement with the Participant that the Lender will not, without the consent of the Participant, agree to any amendment or waiver.

**CHOICE OF LAW; WAIVER OF TRIAL BY JURY.** This Note shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to any conflict of law provisions contained therein. If any of the provisions of this agreement are found to be invalid under such laws, the validity of the others shall not be affected. The Borrower hereby waives trial by jury in any action, proceeding or counterclaim brought against the Borrower in connection with or arising out of this Note, and the Borrower hereby consents to the jurisdiction of the Courts of the State of New York for determination of any dispute as to any such matters.

**NOTICES.** All notices or other communications required or permitted hereunder shall be in writing and shall be deemed given or delivered (i) when delivered personally; (ii) on the next business day if by overnight courier; or (iii) on the third business day after being sent by registered or certified mail, to the address of each of the parties specified above or to such other address as such party may indicate by a notice given or delivered to the other party hereto.

**MODIFICATION OR WAIVER.** No provision of this Note may be waived except by agreement in writing, signed by the waiving party. A waiver of any term or provision of this Note shall not be construed as a waiver of any other term or provision. No change, modification or amendment of any provision of the Note shall be valid unless the same shall be in writing and signed by the parties hereto.

**SUCCESSORS.** This Note and all of its provisions shall be binding on my heirs, successors and/or assigns and on my estate should I pass prior to full repayment of this Note.

**SEVERABILITY.** If any provision of this Note is prohibited or held to be invalid, illegal, or unenforceable in any jurisdiction, the parties hereto agree to the fullest extent permitted by law that such invalidity, illegality, or unenforceability shall not affect the validity, legality, and enforceability of the other provisions of this Note and shall not render such provision prohibited, invalid, illegal, or unenforceable in any other jurisdiction.

**IT IS HEREBY EXPRESSLY AGREED,** that all of the covenants, conditions and agreements contained in the Mortgage are hereby made part of this instrument. Presentment for payment, notice of dishonor, protest and notice of protest are hereby waived.

This note is secured by a mortgage made by the maker to the payee of even date herewith, on property located at **1905 FULTON STREET, BROOKLYN, NEW YORK.**

**1905 FULTON STREET LLC**

**TOMER DAFNA – Managing Member**

STATE OF NEW YORK )
                 ) SS:
COUNTY OF KINGS )

On the 8th DAY OF OCTOBER, 2015 before me, the undersigned, personally appeared TOMER DAFNA personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her/their capacity(ies) and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

NOTARY PUBLIC

KELLY OBRIEN
NOTARY PUBLIC STATE OF NEW YORK
NO. 01OB6211041
QUALIFIED IN KINGS COUNTY
TERM EXPIRES 09/08/20

*Record and return to:*
**SADDAK FUNDING LLC**
13 N CIRCLE DR, GREAT NECK, YORK 11021

# EXHIBIT D
# (MORTGAGE)

Case 1:21-49626 Dahl Doc 17 Filed 05/28/21 Entered 05/28/21 17:05:31

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2015101501043002001EF3FB

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 10 |
|---|---|---|
| **Document ID:** 2015101501043002 | Document Date: 10-08-2015 | Preparation Date: 10-15-2015 |
| Document Type: MORTGAGE | | |
| Document Page Count: 9 | | |

**PRESENTER:**
ETA-1598-14-K
ENTERPRISE TITLE AGENCY, INC.
393 JERICHO TURNPIKE, SUITE 208
MINEOLA, NY 11501
516-558-9866
ENTERPRISETITLE@YAHOO.COM

**RETURN TO:**
ETA-1598-14-K
ENTERPRISE TITLE AGENCY, INC.
393 JERICHO TURNPIKE, SUITE 208
MINEOLA, NY 11501
516-558-9866
ENTERPRISETITLE@YAHOO.COM

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 1530 | 12 | Entire Lot | 1905 FULTON STREET |

Property Type: 1-3 FAMILY WITH STORE / OFFICE

### CROSS REFERENCE DATA

CRFN_____ or DocumentID_____ or _____ Year____ Reel____ Page____ or File Number_____

### PARTIES

**MORTGAGOR/BORROWER:**
1905 FULTON STREET LLC
914 BEDFORD AVENUE
BROOKLYN, NY 11205

**MORTGAGEE/LENDER:**
SADDAK FUNDING LLC
13 N CIRCLE DRIVE
GREAT NECK, NY 11021

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 400,000.00 | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 400,000.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 2,000.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 4,000.00 | $ | 0.00 |
| Spec (Additional): | $ | 1,000.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 1,200.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 8,200.00 | | |
| Recording Fee: | $ | 82.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed 11-06-2015 16:05
City Register File No.(CRFN):
2015000397510

*Annette M. Hill*

*City Register Official Signature*

ETA 1598-14-K

Mort. Tax   7,170 00

B: 1530

L: 12

# MORTGAGE

**THIS MORTGAGE**, made the 8TH DAY OF OCTOBER, 2015, between,

**1905 FULTON STREET LLC**                    the **MORTGAGOR**,
**914 BEDFORD AVENUE, BROOKLYN, NEW YORK 11205**

and

**SADDAK FUNDING LLC**
**13 N CIRCLE DR, GREAT NECK, YORK 11021**

                                   the **MORTGAGEE**,

**WITNESSETH,** that to secure the payment of an indebtedness, in the sum of **FOUR HUNDRED THOUSAND DOLLARS ($400,000.00)** lawful money of the United States, to be paid with interest thereon to be computed from the date hereof, at the rate of twelve (12%) percent per annum, in accordance with the terms of the note executed on the date hereof by the Mortgagor in favor of the Mortgagee (the "**Note**"),

the **MORTGAGOR** hereby **mortgages** to the **MORTGAGEE**

**ALL** that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the

## SEE ATTACHED DESCRIPTION

**TOGETHER** with all right, title and interest of the **MORTGAGOR** in and to the land lying in the streets and roads in front of and adjoining said **PREMISES;**

**TOGETHER** with all fixtures, chattels and articles of personal property now or hereafter attached to or used in connection with said **PREMISES,** including but not limited to furnaces, boilers, oil burners, radiators and piping, coal stokers, plumbing and bathroom fixtures, refrigeration, air conditioning and sprinkler systems, wash-tubs, sinks, gas and electric fixtures, stoves, ranges, awnings, screens, window shades, elevators, motors, dynamos, refrigerators, kitchen cabinets, incinerators, plants and shrubbery and all other equipment and machinery, appliances, fittings, and fixtures of every kind in or used in the operation of the buildings standing on said **PREMISES,** together with any and all replacements thereof and additions thereto;

**TOGETHER** with all awards heretofore and hereafter made to the **MORTGAGOR** for taking by eminent domain the whole or any part of said **PREMISES** or any easement therein, including any awards for changes of grade of streets, which said awards are hereby assigned to the **MORTGAGEE,** who is hereby authorized to collect and receive the proceeds of such awards and to give proper receipts and acquittance therefor, and to apply the same toward the payment of the **MORTGAGE** debt, notwithstanding the fact that the amount owing thereon may not then be due and payable; and the said **MORTGAGOR** hereby agrees, upon request, to make, execute and

Case 1-21-40067-nhl Doc 17 Filed 05/28/21 Entered 05/28/21 17:05:31

INDEX NO. 517283/2018
RECEIVED NYSCEF: 08/23/2018

## Schedule A Description

Title Number **ETA-1598-14-K**                                        Page    1

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, and being more particularly bounded and described as follows:

BEGINNING at a point on the northerly side of Fulton Street at the southeast corner of the premises about to be described herein, said point being also distant 256.24  feet westerly as measured along the northerly side of Fulton Street from the corner formed by the intersection of the northerly side of Fulton Street with the westerly side of Howard Avenue;

RUNNING THENCE from said point or place of beginning northerly and parallel with Howard Avenue 76.92 feet to the southerly side of MacDougal Street;

RUNNING THENCE westerly along the southerly side of MacDougal Street 25.00 feet;

RUNNING THENCE southerly and again parallel with Howard Avenue 71.33 feet to the northerly side of Fulton Street and;

RUNNING THENCE easterly along the northerly side of Fulton Street 25.62 feet to the point or place of BEGINNING.

deliver any and all assignments and other instruments sufficient for the purpose of assigning said awards to the **MORTGAGEE**, free, clear and discharged of any encumbrances of any kind or nature whatsoever.

**AND** the **MORTGAGOR** covenants with the **MORTGAGEE** as follows:

1. That the **MORTGAGOR** will pay the indebtedness as provided in the Note.

2. That the **MORTGAGOR** will keep the buildings on the **PREMISES** insured against loss by fire for the benefit of the **MORTGAGEE**; that **MORTGAGOR** will assign and deliver the policies to the **MORTGAGEE**; and that **MORTGAGOR** will reimburse the **MORTGAGEE** for any premiums paid for insurance made by the **MORTGAGEE** on the **MORTGAGOR'S** default in so insuring the buildings or in so assigning and delivering the policies.

3. That no building on the **PREMISES** shall be removed or demolished without the consent of the **MORTGAGEE**.

4. That the whole of said principal sum and interest due pursuant to the Note shall become due at the option of the **MORTGAGEE**: after default in the payment of any tax, water rate or assessment for thirty days after notice and demand; or after default after notice and demand either in assigning and delivering the policies insuring the buildings against loss by fire or in reimbursing the **MORTGAGEE** for premiums paid on such insurance, as hereinbefore provided; or after default upon request in furnishing a statement of the amount due on the **MORTGAGE** and whether any offsets or defenses exist against the **MORTGAGE** debt, as hereinafter provided.

5. That the holder of this **MORTGAGE**, in any action to foreclose it, shall be entitled to the appointment of a receiver.

6. That the **MORTGAGOR** will pay all taxes, assessments or water rates, and in default thereof, the **MORTGAGEE** may pay the same.

7. That the **MORTGAGOR** within five days upon request in person or within ten days upon request by mail will furnish a written statement duly acknowledged of the amount due on the Note and this **MORTGAGE** and whether any offsets or defenses exist against the **MORTGAGE** debt.

8. That notice and demand or request may be in writing and may be served in person or by mail.

9. That the **MORTGAGOR** warrants the title to the **PREMISES**.

10. That the fire insurance policies required by paragraph No. 2 above shall contain the usual extended coverage endorsement; that in addition thereto the **MORTGAGOR**, within thirty days after notice and demand, will keep the **PREMISES** insured against war risk and any other hazard that may reasonably be required by the **MORTGAGEE**. All of the provisions of paragraphs No. 2 and No. 4 above relating to fire insurance and the provisions of Section 254 of the Real Property Law construing the same shall apply to the additional insurance required by this paragraph.

11. That in case of a foreclosure sale, said **PREMISES**, or so much thereof as may be affected by this **MORTGAGE**, may be sold in one parcel.

Case 1-21-40614-nhl Doc 17 Filed 05/28/21 Entered 05/28/21 17:05:31

12. That if any action or proceeding be commenced (except an action to foreclose this **MORTGAGE** or to collect the debt secured thereby), to which action or proceeding the **MORTGAGEE** is made a party, or in which it becomes necessary to defend or uphold the lien of this **MORTGAGE**, all sums paid by the **MORTGAGEE** for the expense of any litigation to prosecute or defend the rights and lien created by this **MORTGAGE** (including reasonable counsel fees), shall be paid by the **MORTGAGOR**, together with interest thereon at the rate of twelve per cent., per annum and any such sum and the interest thereon shall be a lien on said **PREMISES**, prior to any right, or title to, interest in or claim upon said **PREMISES** attaching or accruing subsequent to the lien of this **MORTGAGE**, and shall be deemed to be secured by this **MORTGAGE**. In any action or proceeding to foreclose this **MORTGAGE**, or to recover or collect the debt secured thereby, the provisions of law respecting the recovering the recovering of costs, disbursements and allowances shall prevail unaffected by this covenant.

13. That the **MORTGAGOR** hereby assigns to the **MORTGAGEE**, the rents, issues and profits of the **PREMISES** as further security for the payment of said indebtedness, and the **MORTGAGOR** grants to the **MORTGAGEE** the right to enter upon and to take possession of the **PREMISES** for the purpose of collecting the same and to let the **PREMISES** or any part thereof, and to apply the rents, issues and profits, after payment of all necessary charges and expenses, on account of said indebtedness. This assignment and grant shall continue in effect until this **MORTGAGE** is paid. The **MORTGAGEE** hereby waives the right to enter upon and to take possession of said **PREMISES** for the purpose of collecting said rents, issues and profits, and the **MORTGAGOR** shall be entitled to collect and receive said rents, issues and profits until default under any of the covenants, conditions or agreements contained in this **MORTGAGE**, and agrees to use such rents, issues and profits in payments of principal and interest becoming due on this **MORTGAGE** and in payment of taxes, assessments, sewer rents, water rates and carrying charges becoming due against said **PREMISES**, but such right of the **MORTGAGOR** may be revoked by the **MORTGAGEE** upon any default, or five days' written notice. The **MORTGAGOR** will not, without the written consent of the **MORTGAGEE**, receive or collect rent from any tenant of said **PREMISES** or any part thereof for a period of more than one month in advance, and in the event of any default under this **MORTGAGE** will pay monthly in advance to the **MORTGAGEE**, or to any receiver appointed to collect said rents, issue and profits, the fair and reasonable rental value for the use and occupation of said **PREMISES** or of such part thereof as may be in the possession of the **MORTGAGOR**, and upon default in any such payment will vacate and surrender the possession of said **PREMISES** to the **MORTGAGEE** or to such receiver, and in default thereof may be evicted by summary proceedings.

14. That the whole of said principal sum and the interest due pursuant to the Note shall become due at the option of the **MORTGAGEE**; (a) after failure to exhibit to the **MORTGAGEE**, within ten days after demand, receipts showing payment of all taxes, water rates, sewer rents and assessments; or (b) after the actual or threatened alteration, demolition or removal of any building on the **PREMISES** without the written consent of the **MORTGAGEE**; or (c) after the assignment of the rents of the **PREMISES** or any part thereof without the written consent of the **MORTGAGEE**; or (d) if the buildings on said **PREMISES** are not maintained in reasonably good repair; or (e) after failure to comply with any requirement or order or notice of violation of law or ordinance issued by any governmental department claiming jurisdiction over the **PREMISES** within three months from the issuance thereof; or (f) if on application of the **MORTGAGEE** two or more fire insurance companies lawfully doing business in the State of New York refuse to issue policies insuring the buildings on the premise; or (g) in the event of the removal, demolition or destruction in whole or in part of any of the fixtures, chattels or articles of

personal property covered hereby, unless the same are promptly replaced by similar fixtures, chattels and articles of personal property at least equal in quality and condition to those replaced, free from chattel **MORTGAGE**s or other encumbrances thereon and free from any reservation of title thereto; or (h) after thirty days notice to the **MORTGAGOR**, in the event of the passage of any law deducting from the value of land for the purposes of taxation any lien thereon, or changing in any way the taxation of **MORTGAGOR** or debts secured thereby for state or local purposes; or (i) if the **MORTGAGOR** fails to keep, observe and perform any of the other covenants, conditions or agreements contained in this **MORTGAGE**; or (j) if the **MORTGAGOR** fails to keep, observe and perform any of the covenants, conditions or agreements contained in any prior **MORTGAGE** or fails to repay to the **MORTGAGEE** any amounts the **MORTGAGEE** may have paid on such **MORTGAGE** with interest thereon as provided in paragraph 16 of this **MORTGAGE**.

15. That the **MORTGAGOR** will, in compliance with Section 13 of the Lien Law, receive the advances secured hereby and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

16. If the **MORTGAGOR** fails to pay any installment of principal or interest on any prior **MORTGAGE** when the same becomes due, the **MORTGAGEE** may pay the same, and the **MORTGAGOR** on demand will repay the amount so paid with interest thereon at the legal rate and the same shall be added to the **MORTGAGE** indebtedness and be secured by this **MORTGAGE**.

17. **MORTGAGOR** agrees that in the event of default and foreclosure, **MORTGAGOR** shall grant sole authority to **MORTGAGEE** to appoint a receiver to manage the **PREMISES** until payment is made in full.

This **MORTGAGE** may not be changed or terminated orally. The covenants in this **MORTGAGE** shall run with the land and bind the **MORTGAGOR**, the heirs, personal representatives, successors and assigns of the **MORTGAGOR** and all subsequent owners, encumbrances, tenants and subtenants of the **PREMISES**, and shall enure to the benefit of the **MORTGAGEE**, the personal representatives, successors and assigns of the **MORTGAGEE** and all subsequent holders of this **MORTGAGE**. The word "**MORTGAGOR**" shall be construed as if it read "**MORTGAGORS**" and the word "**MORTGAGEE**" shall be construed as if it read "**MORTGAGEES**" whenever the sense of this **MORTGAGE** so requires.
IN WITNESS WHEREOF, this **MORTGAGE** has been duly executed by the **MORTGAGOR**.

## RIDER PROVISIONS OF MORTGAGE

A.  The **MORTGAGOR** shall pay the real estate taxes and property insurance in a timely fashion and provide proof of payment to the **MORTGAGEE**. In the event that the **MORTGAGOR** shall not pay the taxes or the insurance, the **MORTGAGEE** reserves the right to escrow one-twelfth (1/12) of the annual real estate taxes and insurance and same shall be added on to the monthly **MORTGAGE** payment. If **MORTGAGOR** shall not pay the additional amount, then the **MORTGAGEE** may, in its sole discretion, declare this loan to be in default.

B.  All tenant security deposits shall be held in a separate trust account in a banking institution of the City of New York, and the **MORTGAGOR** shall give notice to the **MORTGAGEE** of the name and location of said account.

C.  In the event of a default by the **MORTGAGOR** in making payment of the full amount due, whether at maturity, after acceleration after default or otherwise, interest at the rate specified on the note executed simultaneously herewith shall be paid by the **MORTGAGOR** to the **MORTGAGEE**, for such additional period before payment is made.

D.  The **MORTGAGOR** agrees that, to the extent permitted by law, the rights and remedies provided for herein, or which the holder of this **MORTGAGE** may otherwise have at law or in equity (including, but not limited to, the right to damages by reason of the failure of the **MORTGAGOR** or then owner of the said premises to keep, observe and perform any of the covenants, conditions or agreements contained in this **MORTGAGE**), shall be distinct, separate and cumulative, and shall not be deemed to be inconsistent with each other; and none of them, whether or not exercised by the holder of this **MORTGAGE**, shall be deemed to be exclusive of any other; and any two or more of all of such rights and remedies may be exercised at the same time.

E.  In the event of a foreclosure the lien of this **MORTGAGE** shall cover any and all personal property owned by the **MORTGAGOR** or in which the **MORTGAGOR** has an interest in the said premises appurtenant to, or used in connection with, the operation of the premises, which personal property shall include, without limitation, ovens, ranges, refrigerators, storm windows, and doors, screens, washers, dryers, dishwashers, air conditioners, heaters and plumbing.

F   In any action to foreclose this **MORTGAGE**, the **MORTGAGEE** shall be entitled to the appointment of a receiver with notice and without regard to or proof of the value or adequacy of the said premises as security for the indebtedness, and all costs and expenses of such foreclosure action shall be paid for in full by **MORTGAGOR**.

G.  The **MORTGAGOR** shall at all times hereunder maintain sufficient fire insurance and extended coverage in such amounts as shall be reasonably required by the holder of this **MORTGAGE** to secure the principal balance of this **MORTGAGE** and to prevent the operation of any co-insurance provisions and shall provide a copy of the renewal policy to the **MORTGAGEE** on the anniversary date of the policy every year.

H.  INTENTIONALLY OMITTED

I.  **MORTGAGOR** shall not transfer or convey or sell the mortgaged premises or any part or portion thereof including, without limitation, a sale, transfer or conveyance by operation of law, nor shall **MORTGAGOR** lease all of the premises without the prior written consent of the **MORTGAGEE** in each instance. For purposes of this paragraph, the transfer of a total of more than 25% of the stock of **MORTGAGOR** (if **MORTGAGOR** is a corporation) or of 25% or more of the Partnership interest of **MORTGAGOR** (if **MORTGAGOR** is a partnership) shall be deemed a sale or transfer or conveyance on the part of **MORTGAGOR** which shall require the prior written consent of **MORTGAGEE**. The failure by the **MORTGAGOR** to obtain the prior written consent of the **MORTGAGEE** to any sale or transfer or conveyance of the mortgaged premises in accordance with the provisions of this paragraph shall entitle the **MORTGAGEE** to accelerate the maturity date of this **MORTGAGE** and declare the entire principal balance hereof, together with all accrued interest hereunder immediately due and payable.

J.  Mortgagor shall not cause or permit the placing of any subordinate mortgage or lien on the mortgaged premises without the prior written consent of the mortgagee in each instance. The failure by the mortgagor to comply with the provisions of this paragraph shall entitle the mortgagee to accelerate the maturity date of this mortgage and declare the entire principal balance hereof together with all accrual interest hereunder immediately due and payable.

K.  In the event any payment herein provided for shall become overdue for a period in excess of five (5) days, a late charge of five (5) cents for each dollar so overdue shall become immediately due to the **MORTGAGEE** as liquidated damages for failure to make prompt payment, and the same shall be secured by this **MORTGAGE**. Said late charges shall be payable with the next installment of principal and/or interest.

L.  Nothing in this **MORTGAGE**, the note or in any other agreement between the **MORTGAGOR** and the **MORTGAGEE** shall require the **MORTGAGOR** to pay, or the **MORTGAGEE** to accept, interest in any amount which would subject the **MORTGAGEE** to penalty under applicable law. In the event that the payment of any interest due hereunder or under the note or any such other agreement would subject the **MORTGAGEE** to penalty under applicable law, then ipso facto the obligation of the **MORTGAGOR** to make such payment shall be reduced to the highest rate authorized under applicable law without penalty.

M.  The **MORTGAGOR** hereby represents and warrants to the **MORTGAGEE** that the **PREMISES** are not currently in use in any manner that would violate any applicable law, order, rule, regulation or decree, including but not limited to environmental laws and regulations. The **MORTGAGOR** hereby covenants and agrees not to use the **PREMISES**, or permit the **PREMISES** to be used, in any manner which would be a violation of any such law, order, rule, regulation or decree.

N.  The **MORTGAGOR** agrees to bear all expenses (including reasonable attorneys' fees for legal services of every kind) as incidental to the enforcement of any of the collateral pledged hereunder, and for the securing thereof, or defending or asserting the rights and claims of the **MORTGAGEE** in respect thereof, by litigation or otherwise, and will pay to the **MORTGAGEE** any such expenses incurred, and such expenses shall be deemed an indebtedness secured by this **MORTGAGE** and shall be collectible in like manner as the principal indebtedness secured by this **MORTGAGE**. All rights and remedies of the

**MORTGAGEE** shall be cumulative and may be exercised singly or concurrently.

O.  Should any suit be commenced to foreclose any prior mortgage then the amount of this **MORTGAGE** and the accompanying note shall immediately become due and payable at the option of the owner or holder of this **MORTGAGE**.

P.  If the **MORTGAGEE** retains counsel for the purpose of collecting any money which may be due under this **MORTGAGE**, or to recover the mortgaged property, or to protect its interests therein by reason of the happening of any of the defaults or breaches set forth in this **MORTGAGE**, then and in that event the **MORTGAGOR** herein agrees to pay reasonable counsel fees, the amount of which to hereby expressly fixed at fifteen (15%) of the then unpaid balance of the **MORTGAGE** debt, and such counsel fees and all disbursements incurred by the **MORTGAGEE** shall be added to the indebtedness secured by this **MORTGAGE** and shall be and hereby are made part of the **MORTGAGE** debt, and shall become an additional lien on said mortgaged property and payable on demand. Said counsel fees are in no event to affect, but are to be paid in addition to any statutory court costs and disbursements.

Q.  Wherever in this mortgage or as a matter of law it is provided that mortgagee's consent or approval shall not be unreasonably withheld or the actions of mortgagee shall be reasonable, the remedy of mortgagor, in the event mortgagor shall claim or establish that mortgagee has unreasonably withheld such consent or approval or has acted unreasonably, shall be limited to injunction, declaratory judgment or arbitration, and in no such even shall mortgagee be liable for a money judgment.

R.  It shall be an act of default hereunder entitling the holder hereof to accelerate the indebtedness secured hereby if the **MORTGAGOR** or the then owner of the property acquires directly or indirectly any mortgage superior to this **MORTGAGE**.

1905 FULTON STREET LLC

By: _____

TOMER DAFNA

FILED: KINGS COUNTY CLERK 08/22/2018 12:25 PM
Case 1-21-406-09-abr Doc 17 Filed 05/28/21 Entered 05/28/21 17:05:31
NYSCEF DOC. NO. 3

INDEX NO. 517283/2018
RECEIVED NYSCEF: 08/23/2018

IN PRESENCE OF:

**1905 FULTON STREET LLC**

**TOMER DAFNA**

STATE OF NEW YORK )
                  )SS:
COUNTY OF KINGS )

On the 8th DAY OF OCTOBER, 2015, before me, the undersigned, personally appeared TOMER DAFNA personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her/their capacity(ies) and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

KELLY OBRIEN
NOTARY PUBLIC STATE OF NEW YORK
NO. 01OB6211041
QUALIFIED IN KINGS COUNTY
TERM EXPIRES 09/03/20 17

_____
NOTARY PUBLIC

SECTION:
BLOCK:    01530
LOT:       0012
COUNTY:  KINGS

ETA 1598 14 K

RETURN BY MAIL TO:
SADDAK FUNDING LLC

RETURN BY MAIL TO:
SADDAK FUNDING LLC
13 N CIRCLE DR, GREAT NECK, YORK 11021